Lenore J. BROWN and Karen B. Brown, Respondents,

v.

ANTHONY MANUFACTURING COMPANY, Employer, and Employers Mutual Liability Insurance Company of Wisconsin, Insurer, Appellants.

No. 45597.

Supreme Court of Missouri, En Banc.

March 10, 1958.

David R. Hardy, David H. Clark, Kansas City, Arthur W. Douville, Kansas City, for appellants.

Sebree, Shook, Hardy & Ottman, Kansas City, of counsel.

Irving Kuraner, Kuraner, Freeman, Kuraner & Oberlander, Kansas City, Davis S. Carson, Pittsburg, for respondents.

HYDE, Judge.

Claimants Lenore J. Brown, widow, and Karen B. Brown, minor daughter, of Birl J. Brown, were given a Workmen's Compensation award of $12,400 for his death. The employer and insurer have appealed from the Circuit Court judgment affirming this award by the Industrial Commission.

The case was heard in Division No. 2, and claimants' motion to dismiss for failure to make a fair and concise statement with- out argument [Rule 1.08(a)(2), 42 V.A. M.S.] was there overruled. Only one judge concurred in all the rulings made in the Divisional opinion reversing the award and the case was transferred to the Court en Banc. We adopt the statement of facts made in the Divisional opinion hereinafter set out without quotation marks.

David E. Eichelberger was claimants' witness. He was president and general manager of the employer corporation. The corporation was a manufacturer and whole- saler of paints, and did some retail business. It had two types of traveling salesmen, viz.: (1) Trade salesmen, who sold shelf goods to dealers, who, in turn, sold to the consum- er—the home owner or painting contractor. (2) Industrial salesmen, who sold to manu- facturers using paint on products they man- ufactured.

Claimants' case rests on the testimony of their witness Sammy Thomas. He testified as follows: He was the proprietor of the "69 Club", a night club located about a mile south of Pittsburg, Kansas, on High- way No. 69. He received a telephone call at the club about 3:45 P. M. June 17, 1953, from a person who stated he was Mr. Brown and whom he had never met. Brown "said he had been out there earlier in the morning, or evening, rather, before I was open", and wanted to sell Thomas some paint, stating he could save him money. Thomas told Brown he was busy cleaning the club, went to dinner at 6:00 or 6:30, and couldn't possibly talk to him until 10:30 or 11:00 P. M. Brown said he intended going to Joplin and wanted to see Thomas before he left. Thomas told Brown he couldn't see him until around 11:00 P. M. Thomas stated that Floyd M. Hensley, whom he had known for years, and Brown came to his Club about 11:15 or 11:20 P. M. Brown introduced himself. He told Brown he would talk to him in just a minute. Hensley and another boy were sitting there and Brown ordered and paid for the beer, but did not drink the bottle he ordered for himself. Brown

"asked me if he could sell me some paint; and I said: 'The place needs painting'; and he said: 'I can save you a lot of money'; so, I asked him how much would it be to paint the outside of it, and he said: 'I can't give you the prices.' * * * And, I kidded him, and he said he would get the prices and let me know in the morning." Witness told Brown that S. F. Green, of Independence, Missouri, owned the building, but witness would have it painted if the prices were reasonable. Brown then told Hensley he wanted to go to the hotel and get some sleep because he wanted to see Mr. Thomas in the morning. He stated Brown was not intoxicated; "if he was, I wouldn't let him come in."

The collision occurred on No. 69 highway, a little north of the driveway to the 69 Club, as Brown and Hensley were leaving.

It was stipulated that Kansas State Trooper Dunkle, if present, would testify that he was a member of the Kansas State Highway Patrol and investigated the accident soon thereafter; that witness Thomas stated to him that the occupants of the car, Brown and Hensley, had been in his Club; "that they had been drinking, and that he had refused to serve them more than one bottle of beer." Thomas admitted he talked with the state troopers. He denied making the statement, saying "because they left there with that much beer in the bottle (indicating)."

Thomas on cross-examination admitted the following convictions of violation of liquor laws. In 1949, he was convicted on three charges. In 1950, he was convicted on four charges. He was convicted on another liquor charge in 1951. He was convicted in 1949 of having in his possession a gaming device. The State of Kansas had closed his 69 Club prior to the hearing on June 14, 1954, before the Industrial Commission.

Claimants' witness Eichelberger further testified: He employed Mr. Brown, after personally interviewing him, as an industrial salesman on June 1, 1953, in the Greater Kansas City area and later extended his territory along the border between Kansas and Missouri. He instructed Brown as to his duties; that is, he was to call at the manufacturers and see the buyer or in some instances the foreman or finisher who specified the paint the manufacturer used on its products. He was to obtain new accounts. The company required its salesmen to submit reports covering the concerns the salesman called on and he explained this to Brown. Brown had a monthly drawing account of $300 plus approved expenses.

Eichelberger testified a salesman had a certain territory, usually set his own time for work; that salesmen were not told to turn down any orders; that they could turn in any order they received and if the buyer's credit and other factors were satisfactory, it would be accepted, or if the company had a dealer in the area, the order would go to the dealer. He did not recall offhand whether the company had a dealer at Pittsburg. Brown's type of selling was not to get a man and say "I'll charge you so much for a gallon of house paint." Brown did not have the prices on small orders which were made at the time of inquiry and could be obtained by calling the office. "The Referee: Does that type of solicitation, or that type of work, that would be done on that night club, is that within his jurisdiction, or within his territory, as a salesman, to cover that type of work?' The Witness: No, sir. * * * The Referee: Any negotiations for any such work, either on night clubs, or any other establishment, was this outside the field of industrial work, for which he was employed? The Witness: Yes, sir." The witness assumed the company would have accepted such an order if the credit and other factors were all right, but it had no business with individuals for which Brown was employed. Brown was expected to call on industrial establishments. He was not expected or authorized to seek or to do business with pool halls or night clubs. The witness had purchased

the company, which was in rather bad shape financially, in May, 1953, and was trying hard to promote sales and build up its business, but not through pool halls or night clubs.

Brown had made no sale and had submitted no report to the company during the entire period of his employment.

A major account of the company was Winchell's, at Fort Scott, Kansas, and Eichelberger gave Brown Winchell's name. Mrs. Brown testified Mr. Brown left Kansas City Tuesday morning, June 16, 1953, and told her he was going to stop in Fort Scott and stay in Pittsburg Tuesday and in Joplin Wednesday. She also stated Eichelberger told her Mr. Brown was hired as an industrial salesman and would accept orders from anyone at any time.

Floyd M. Hensley, defendant's witness, testified he had known Brown for six or seven months. Hensley was in Scalet's pool hall in Pittsburg, June 17, 1953, and Brown came in there about 11:00 A.M. This is the first appearance of Brown in the record after he left Kansas City. Scalet's is a recreation hall, with pool and billiard tables, pin ball machines, and a newsstand, and sells pop, beer, and sandwiches. Brown and Hensley left Scalet's about 1:30 or 2:00 P.M. Brown went to his hotel. Hensley returned to Scalet's about 7:30 or 8:00 P.M. Brown was playing pool. Brown and he were together at Scalet's until they left at 11:00 or 11:30 P.M. for the 69 Club. He knew he left with Brown. He did not mention Robert Crawford or of having gone to the American Legion Hall. He went to Scalet's to play pool and drink a few drinks, and had the same purpose in going to the 69 Club. He introduced Brown to Thomas at the Club. Hensley talked to a friend. They were at the Club about five minutes. They were not there fifteen minutes. Brown did not discuss business with Hensley, only told him the territory he made, and Hensley thought Brown was working

for a drug company. Brown had previously sold for a pharmaceutical house.

Robert Crawford, defendants' witness, was a truck driver. He left Scalet's with Brown and Hensley. He corroborated Hensley's testimony about playing pool with Brown at Scalet's, and Hensley introducing Brown to Thomas at the 69 Club. He stated Brown had offered to take him home, and they first went to the American Legion Hall and each had a can of beer and watched a card game. They left for the 69 Club in fifteen or twenty minutes. He didn't know why Brown went to the Club. He heard Brown or Hensley say: "He may be out there; he goes out there sometimes", and he thought Hensley and Brown might be looking for somebody. Witness purchased a bottle of beer. Brown and Thomas talked but he did not hear the conversation. He described the Club as "not too big a place" with "juke box music." He had not finished his beer when Brown and Hensley were ready to leave, and did not go with them. He was not intoxicated that night although he gets drunk frequently.

The referee awarded compensation. The specific findings of the Commission upon review and material to the finding that the employee's death "arose out of and in the course of his employment" were: "We further find that the employee, just prior to the accident, made a call upon a prospective customer, namely, Sammy Thomas, for the purpose of selling him paint for the employee's employer; that the employer was anxious to sell paint and that this employee was supposed to promote new accounts and to sell paint wherever possible although he was, primarily, to call upon industrial accounts. * * *

"We further find and conclude that the employee, Birl Brown, would not have made the trip to the night club except for the purpose of attempting to sell paint to the owner of the night club. Brown v. Weber

Implement & Auto Co. [357 Mo. 1], 206 S.W.2d 350."

The review of a compensation case is of the whole record, including the legitimate inferences to be drawn therefrom, in the light most favorable to the award of the Commission, and to determine whether the Commission's findings, if supported by competent and substantial evidence, are contrary to the overwhelming weight of the evidence. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647 [1-3]; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55 [1-2]; Brown v. Weber Implement & Auto Co., 357 Mo. 1, 206 S.W.2d 350 [1-2]; Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5 [1]; Section 536.140 RSMo, V.A.M.S. as amended Laws 1953, p. 679. Two questions are involved: "(a) Is there competent and substantial evidence to support the finding of the Commission that the death arose 'out of' the employment? and, (b) Is that finding contrary to the overwhelming weight of the evidence?" Toole v. Bechtel Corp., Mo., 291 S.W.2d 874, 880 [10]. However, the above cited cases hold that the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witness gave oral testimony.

Claimants say Brown v. Weber Implement & Auto Co., 357 Mo. 1, 206 S.W.2d 350, on which the Commission relied, is almost exactly like this case because "in that case, as in this one, the employer contended that the employee was outside his contract of employment—in Brown v. Weber, because he was outside his territory, in this case because he was selling to a customer to whom he allegedly had no authority to sell." However, in Brown v. Weber, the matter of authority to sell at the particular place was in dispute. The employee Nash Brown had been employed by the Weber Company for 20 years. He had previously sold his company's goods to the Yacht Club, where he went on the night of his death in response to a call from its Secretary-Treasurer, missing another engagement to do so. The Secretary-Treasurer had been delegated by the Yacht Club's Board to contact Nash Brown for the purpose of advising them as to type of spark plugs and oil needed for boats and motors and furnishing them a new stock, their previous practice of carrying such items having been discontinued during the war. Nash Brown went there in his employer's car, took the order and made a written notation of it. The fact that he took his wife and another couple with him (who were to go with him on the previously planned engagement) did not prevent the trip to the Yacht Club from being a business trip (they intended to fulfill the other engagement if the business at the Yacht Club was completed in time); and, therefore, Nash Brown was properly found to be making the trip for his employer to sell the goods he was employed to sell. Likewise, in Conley v. Meyers, Mo. Sup., 304 S.W.2d 9, also cited by claimants, the employee Conley, an automobile salesman, had been directed by his employer to go to Platte City, get a car, drive it to Gladstone and show it to a prospect. He received an injury, from which he died, in the City of Gladstone, at a place that "could well have been on the direct route to the prospect's home." While there was also evidence from which it could have been found that he was going on a mission of his own at the time of the accident, we held the Commission's finding to the contrary was not against the overwhelming weight of the evidence. In this case Birl Brown was not sent to the night club by his employer, was not called there by anyone desiring to buy from him, was not employed to make any retail sale, had never made a retail sale and did not know retail prices. His companions on the trip to the night club did not know of any business purpose and this visit was in the same pattern as their other activities of the evening.

The relationship of master and servant or principal and agent exists only in contract. Hodge v. Feiner, Mo.App., 78

S.W.2d 478 [2], approved 338 Mo. 268, 90 S.W.2d 90 [1]. Generally speaking, the scope of the contract of employment furnishes the determinative test whether the accident is one for compensation. Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W.2d 563, 566, quoting Sylcox v. National Lead Co., 225 Mo.App. 543, 38 S.W.2d 497 [1]; Garbo v. P. M. Bruner Granitoid Co., Mo.App., 249 S.W.2d 477, 480. Other cases cited by claimants, Wamhoff v. Wagner Electric Corp., 354 Mo. 711, 190 S.W.2d 915, 917 [2–4], 161 A.L.R. 1454; Conyers v. Krey Packing Co., Mo. App., 194 S.W.2d 749, 750, 752; Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W. 2d 601, 605; Ransdell v. International Shoe Co., 329 Mo. 47, 44 S.W.2d 1, 82 A.L.R. 1249; Dehoney v. B-W Brake Co., Mo., 271 S.W.2d 565, involved employees who were shown to have performed their regular duties and who were injured while performing an act beneficial to the employer in addition to their regular duties. Several were determined prior to the present scope of judicial review of administrative rulings. V.A.M.S. Mo.Const.1945, Art. V, Sec. 22. Furthermore, the activities of the employees in those cases were more closely and directly related to the work they were employed to do than in this case.

██ Birl Brown was employed June 1, 1953 and was killed seventeen days later. He had made no sale of any kind and had submitted no report of any activity as he was expected to do. His employer was a paint manufacturer. He was employed as an industrial salesman to call on manufacturers who used paint on the products they manufactured. There is no evidence that he had any instructions or authority to call on or try to sell his employer's products to anyone except manufacturers. His employer had trade salesmen to do other kinds of selling, that is selling to dealers. There is no evidence that either class of salesmen ever made sales direct to consumers. Although Eichelberger said an order of any kind would not be turned down, if credit and other factors were satisfactory, the order would be sent to a dealer in the area if there was one; but there is no evidence that there ever was any such order received from any salesman and it is certain there had been none from Brown. Therefore, there is no evidence that the employer had by practice broadened the scope of Brown's employment or that of any other salesman. Thomas' convictions, whether for misdemeanors or felonies, were proper to affect his credibility as a witness; and the referee erred in excluding them. Sec. 491.050 RS Mo 1949, V.A.M.S.; State v. Bagby, 338 Mo. 951, 93 S.W.2d 241 [5]; Fisher v. Gunn, Mo., 270 S.W.2d 869, 875. However, accepting his testimony, it constitutes at most only evidence that outside the regular or expected working hours, Brown called on Thomas, a person not the owner of a building and who was not a manufacturer or a manufacturer's representative, to talk to him about buying paint (as to the price of which Brown had no information) to use on the exterior of a building rented by Thomas for a night club. Thomas said he "kidded" Brown so perhaps Brown was not serious either, not being employed to make such a sale. Considered in connection with all of the facts and circumstances shown, our conclusion is that a finding to the effect that Brown's duties embraced or contemplated solicitations of retail sales of house paint to night club operators as prospective customers and new accounts of this manufacturer and wholesaler of paint could rest only in speculation and conjecture. We, therefore, hold that the overwhelming weight of the evidence shows the type of solicitation testified to by Thomas, retail sales of outside house paint, were not within Brown's duties; and, therefore, the trip of Brown and his companions to the night club was not for business purposes of Brown's employer.

The judgment affirming the award is reversed.

All concur.