James W. HEATON, Sr., Plaintiff-Appellant,

v.

Frank FERRELL, d/b/a Ferrell Oil and Coal Company and New Amsterdam Casualty Company, Defendants-Respondents.

No. 7750.

Springfield Court of Appeals.

Missouri.

June 25, 1959.

Dwight Crader, Sikeston, for plaintiff-appellant.

Blanton & Blanton, Sikeston, for defendants-respondents.

STONE, Presiding Judge.

As James W. Heaton, Sr., forty-two years of age, employed by Frank Ferrell d/b/a Ferrell Oil and Coal Company as "manager" of a service station at Morehouse, Missouri, was returning from his home at Idalia, fifteen miles from his place of employment, during the noon hour on Saturday, December 1, 1956, the Chevrolet pickup owned and driven by Heaton was struck by a Missouri Pacific train at the Hunterville crossing, about seven miles from Morehouse. In this proceeding for benefits under the Missouri Workmen's Compensation Law, the Industrial Commission of Missouri entered a final award denying compensation because "said accident did not arise out of and in the course of (Heaton's) employment with the Ferrell Oil and Coal Company but * * * the employee was on a personal mission during his lunch hour at the time the accident occurred." From the judgment of the circuit court affirming that final award, Heaton appeals.

■ We emphasize at the outset that, although on judicial review the courts are authorized to determine whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration, this does not mean that either the circuit or the appellate court should substitute its own judgment on the evidence for that of the Commission; but, on the contrary, the reviewing court may set aside the findings and award of the Commission only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award. Hogue v. Wurdack, Mo., 316

S.W.2d 523, 526; Garrison v. Campbell "66" Express, Mo.App., 297 S.W.2d 22, 30(8), and cases there collected. Our statement of facts accords appropriate and required recognition to that guiding principle. Slider v. Brown Shoe Co., Mo.App., 308 S.W.2d 306, 307; Davis v. McKinney, Mo. App., 303 S.W.2d 189, 190.

About 12:15 P.M. on December 1, 1956, Heaton pumped (so he said) fifty gallons of kerosene into a barrel on his pickup and, with his thirteen-year old son who frequently came to the service station at Morehouse on Saturdays, Heaton departed for his home at Idalia, where the family "was out of coal oil." Leaving the kerosene and his son at home, Heaton was returning to Morehouse when he tied with the train at the Hunterville crossing. In the claim for compensation signed by him personally, Heaton gave the hour of accident as 1:15 P.M. At the hearing, he testified that the train had hit him at "ten minutes till one" and that he had not eaten lunch at home but "aimed to stop to eat dinner on the way back." Heaton stated that, when he "had hauled kerosene to (his) place before," he had paid the cash service station price for it at the time he took it. However, he readily admitted that he had not paid for the kerosene taken to his home on December 1, 1956, and employer Ferrell said that the records of the Morehouse station showed no fifty-gallon sale of kerosene on that date.

Heaton had worked for Ferrell since 1951 and had been "manager" of Ferrell's service station at Morehouse since 1954. The other employees at the Morehouse station were one of Heaton's sons and Henry Moser, "a weekend extra." On Saturdays and Sundays, Heaton's hours of employment were from 6:00 A.M. to 6:00 P.M. with one hour "off for lunch." Ferrell did not designate when Heaton's lunch hour was to be taken—"that was left up to him"; and Ferrell, who lived in Sikeston, gave Heaton no lunch money, made no suggestion as to where he should eat, and had

no idea where he "usually went to lunch." Heaton was paid $60 per week, the same salary paid by Ferrell to the manager of another service station at Sikeston. Ferrell furnished no means of transportation to Heaton, gave Heaton no travel allowance, and in no wise compensated or remunerated him for any expense in going to or coming from the Morehouse station. Heaton had owned the Chevrolet pickup involved in the accident of December 1, 1956, only about five months. Prior to that, he had "a passenger car." Some three weeks before the accident, the Heaton family had moved from Sikeston, six miles northeast of Morehouse, to Idalia, fifteen miles west of Morehouse, but Heaton's weekly wage and hours of employment were the same before and after he moved from Sikeston to Idalia, and likewise were the same before and after he acquired the Chevrolet pickup.

Upon this appeal, Heaton's counsel emphasizes the statements of his client that he had used the pickup for "just anything that was to be done * * * around the station" and had made some small deliveries in the pickup, and Ferrell's concessions on cross-examination that he had seen the Heaton pickup at the Morehouse service station, had not forbidden its use for deliveries, and thought that it probably had been used "on tires and batteries, etc., in emergencies." However, when read in context, the emphasized testimony does not have the compelling effect or persuasive force claimed for it by Heaton's counsel. The Heaton pickup did not bear Ferrell's name and was not insured by him, and the *uncontradicted* testimony of Ferrell was that he did not require Heaton to have a pickup or to furnish any transportation and that he (Ferrell) had no knowledge that the Heaton pickup ever had been used for the delivery of any petroleum products. Heaton readily conceded that Ferrell had given no direction concerning operation of the Heaton pickup or for delivery of any fuel oil from the Morehouse station, and the parties agreed that the established policy and practice with respect to home de-

liveries of fuel oil in the Morehouse area was that no order for less than twenty-five gallons was to be accepted, and that orders for twenty-five gallons or more were to be telephoned to Ferrell's bulk plant at Sikeston and were to be filled by Ferrell's "big bulk delivery trucks" at a delivered price per gallon higher than the cash sale price at Ferrell's service stations.

Passing any question of credibility and accepting at face value Heaton's testimony concerning alleged prior use of his pickup for deliveries of kerosene, such testimony shows no more than that, on "several" occasions, he had accommodated neighbors in the immediate vicinity of the Morehouse station by delivering small quantities of kerosene sold at the cash station price—"I have hauled to Jean Mosley and there has been several different ones that have a five or ten gallon can; I would just set it on and carry it over for them." But, there was no evidence from which it reasonably and fairly might be inferred that Ferrell knew of or acquiesced in any such occasional use of the Heaton pickup, and Ferrell's positive testimony to the contrary that he had no knowledge of any use of the Heaton pickup "for the delivery of petroleum products" stands uncontradicted and unimpeached.

The general principles bearing upon proper resolution of the determinative question, to-wit, whether Heaton's injury arose "out of and in the course of his employment" [Section 287.120, subd. 1, RSMo 1949, V.A.M.S.], have become so well settled that they are repeated almost by rote in cases involving that question. An injury arises *out of the employment* when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury, and *in the course of the employment* when it occurs within the period of employment, at a place where the employee reasonably may be, and while he reasonably is fulfilling the duties of his employment or is engaged in doing something inciden-

tal thereto.[1] But, recognizing the difficulty often encountered in applying broad legal principles to specific factual situations, our courts as frequently have said that no all-embracing definition of the phrase "arising out of and in the course of his employment" has yet been framed, and have added the common-sense admonition that every case involving the quoted phrase should be decided upon its own particular facts and circumstances and not by formula.[2] However, it may be helpful in consideration of the instant case to bear in mind that, before an injury may be said to arise out of the employment, it must have been a rational consequence of some hazard connected with the employment;[3] that, generally speaking, the scope of the contract of employment furnishes the determinative test as to whether or not the accident is compensable as "arising out of and in the course of * *

employment";[4] and, that cases involving construction and application of the quoted phrase usually have turned upon the point whether, under the particular circumstances of each such case, the injury arose from something which had become an incident to the employment.[5]

■ With nothing in the record contradictory of or inconsistent with the clear and unequivocal testimony of employer Ferrell that no provision had been made for deliveries from the Morehouse station and that Heaton had no duty to make any such deliveries, certainly it could not be said reasonably that Heaton was fulfilling any duty of his employment in using his pickup during his lunch hour to take his kerosene (alleged by him to have been purchased at the cash service station price) to his home, some fifteen miles distant from

1. Graves v. Central Electric Power Cooperative, Mo., 306 S.W.2d 500, 503; Conley v. Meyers, Mo., 304 S.W.2d 9, 12(5); Culberson v. Daniel Hamm Drayage Co., Mo., 286 S.W.2d 813, 816-817; Lunn v. Columbian Steel Tank Co., 364 Mo. 1241, 275 S.W.2d 298, 301(6, 7); Dehoney v. B–W Brake Co., Mo., 271 S.W.2d 565, 566; Spradling v. International Shoe Co., 364 Mo. 938, 270 S.W.2d 28, 30(3); Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421, 423(5, 6); Morgan v. Duncan, 361 Mo. 683, 236 S.W.2d 281, 283(2, 3); Fowler v. Baalmann, Inc., 361 Mo. 204, 234 S.W.2d 11, 16(7, 8); Goetz v. J. D. Carson Co., 357 Mo. 125, 206 S.W.2d 530, 534(7, 8); Cassidy v. Eternit, Inc., 326 Mo. 342, 32 S.W.2d 75, 78; Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S.W.2d 128, 130(1, 2); Thompson v. Otis Elevator Co., Mo.App., 324 S.W.2d 755; May v. Ozark Central Tel. Co., Mo.App., 272 S.W.2d 845, 848(3, 4); McFarland v. St. Louis Car Co., Mo.App., 262 S.W.2d 344, 346; Jordan v. Chase Hotel, Mo.App., 244 S.W.2d 404, 406 (2); Smith v. Levis-Zukoski Mercantile Co., 223 Mo.App. 743, 14 S.W.2d 470, 472.

2. Finley v. St. Louis Smelting & Refining Co., 361 Mo. 142, 233 S.W.2d 725, 726 (1); Brown v. Weber Implement & Auto Co., 357 Mo. 1, 206 S.W.2d 350, 354 (3); Wamhoff v. Wagner Electric Corp., 354 Mo. 711, 190 S.W.2d 915, 917(1),

161 A.L.R. 1454; Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W.2d 601, 605(8); Carriker v. Lindsey, Mo.App., 313 S.W.2d 43, 45(4); Rankin v. Girvin, Mo.App., 231 S.W.2d 242, 249, 251; Stout v. Sterling Aluminum Products Co., Mo.App., 213 S.W.2d 244, 246(1). See also the Culberson, Lunn, Dehoney, Foster, Morgan, Goetz, and May cases cited in footnote 1, supra.

3. Toole v. Bechtel Corp., Mo., 291 S.W.2d 874, 880; Scherr v. Siding & Roofing Sales Co., Mo.App., 305 S.W.2d 62, 65 (6); Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211, 212.

4. Brown v. Anthony Manufacturing Co., Mo., 311 S.W.2d 23, 28(4); Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 576, 229 S.W.2d 563, 566; Garbo v. P. M. Bruner Granitoid Co., Mo.App., 249 S.W.2d 477, 480; Sylcox v. National Lead Co., 225 Mo.App. 543, 38 S.W.2d 497, 499(1).

5. Wamhoff v. Wagner Electric Corp., supra, 354 Mo. loc. cit. 715, 190 S.W.2d loc. cit. 917; Finley v. St. Louis Smelting & Refining Co., supra, 361 Mo. loc. cit. 145, 233 S.W.2d loc. cit. 726, 727; Toole v. Bechtel Corp., supra, 291 S.W.2d loc. cit. 879; Carriker v. Lindsey, supra, 313 S.W.2d loc. cit. 46, 47; Huskey v. Kane Chevrolet Co., Mo.App., 173 S.W.2d 637, 639; Ricketts v. Story Laundry & Dry Cleaning Co., Mo.App., 155 S.W.2d 536, 539.

his place of employment; but, Heaton's theory seems to be that nevertheless the injury arose from something which had become an incident to the employment. (See cases cited marginally in footnote 5.) The fundamental frailty of this theory is that there was no substantial evidence to support it. True, employer Ferrell said that, although he knew "of no special instance," the Heaton pickup probably had been used "on tires and batteries, etc., in emergencies." But, Ferrell also testified definitely that he had no knowledge that Heaton had ever used his pickup for the delivery of any petroleum products. Furthermore, the tenor of the questions propounded by Heaton's counsel and of the answers thereto indicated an effort to show that the pickup had been used for small deliveries in the immediate vicinity of the Morehouse station, not that Heaton had ranged far and wide over a territory with a radius of not less than fifteen miles from the Morehouse station and, in contemptuous disregard of Ferrell's known and established policy with respect to home deliveries of twenty-five gallons or more, nevertheless had made such deliveries of large quantities of fuel oil at the cash service station price. In fact, there is not so much as a suggestion that any product purchased at the Morehouse station ever had been delivered in the Heaton pickup to a destination fifteen miles from that station, excepting only Heaton's alleged delivery of kerosene to his own home at Idalia, where he had resided only three weeks

prior to the accident under consideration. And, as Ferrell said, he had no knowledge that Heaton had delivered kerosene to himself—"I didn't even know he (Heaton) burned fuel oil."

■ The general rule is that an injury sustained by an employee while going to or coming from his work does not arise out of and in the course of employment and is not compensable;[6] and where, as here, an employee has a definite place of work and the time of work does not include his lunch hour, "the trip away from and back to the premises for the purpose of getting lunch is indistinguishable in principle from the trip at the beginning and end of the work day, and should be governed by the same rules and exceptions." Larson's Workmen's Compensation Law, Vol. 1, § 15.51, p. 213. This case does not fall within any of the principal exceptions [58 Am.Jur., Workmen's Compensation, § 217, loc. cit. 724] to the basic "going-and-coming rule," i. e., where the employer provides transportation as an incident of employment[7] or knowingly remunerates the employee for the time or expense involved,[8] or where the employee performs or expects to perform en route some special task, service or errand in connection with his employment.[9]

Under some circumstances, injuries occurring on the employer's premises during the lunch hour may be considered as having arisen in the course of employment;[10]

---

6. Garbo v. P. M. Bruner Granitoid Co., supra, 249 S.W.2d loc. cit. 479(2); Tucker v. Daniel Hamm Drayage Co., Mo.App., 171 S.W.2d 781, 784(2); Larson's Workmen's Compensation Law, Vol. 1, § 15.11, p. 195; 58 Am.Jur., Workmen's Compensation, § 217, p. 723; 99 C.J.S. Workmen's Compensation § 232, p. 807.

7. Sanderson v. Producers Commission Ass'n, supra; Sylcox v. National Lead Co., supra, 38 S.W.2d loc cit. 499-500; Howes v. Stark Bros. Nurseries & Orchards Co., 223 Mo.App. 793, 22 S.W. 2d 839; 99 C.J.S. Workmen's Compensation §235a, p. 834.

8. Reneau v. Bales Electric Co., Mo., 303 S.W.2d 75; Larson's Workmen's Compensation Law, Vol. 1, §§ 16.20 and 16.-30, pp. 227–232; 58 Am.Jur., Workmen's Compensation, § 219, p. 726.

9. Gingell v. Walters Contracting Corp., Mo.App., 303 S.W.2d 683; Larson's Workmen's Compensation Law, Vol. 1, § 16.10, p. 224; 58 Am.Jur., Workmen's Compensation, § 220, p. 726; 99 C.J.S. Workmen's Compensation § 234d, p. 828.

10. Toole v. Bechtel Corp., supra, 291 S.W.2d loc. cit. 879(2); Conklin v. Kansas City Public Service Co., 226 Mo.App. 309, 41 S.W.2d 608; Larson's Work-

but, where an employee, who (as did Heaton) customarily eats lunch off the employer's premises, is injured during the lunch hour while on a trip in his own vehicle and the claim is that the injury arose from something incident to the employment, it would seem to be appropriate to resolve that claim under the formula stated by Justice Cardozo in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183(2)— a formula said to have "never yet been improved upon" [Larson's Workmen's Compensation Law, Vol. 1, § 18.12, p. 241] and on several occasions quoted with approval by our Missouri courts:[11] "To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk." In our view of the instant case, Heaton's trip to his home during his lunch hour on December 1, 1956, was not "a substantial part of the service" for which he was employed. Larson's Workmen's Compensation Law, Vol. 1, § 16.00, p. 222. In fact, it was no part of that service. For, whether Heaton's trip was to replenish his personal supply of fuel oil and/or to take his thirteen-year old son home and/or to eat lunch, his purposes were personal and his employment in no wise contributed to create any necessity for the trip. So, his travel being personal, personal was the risk.

 The Compensation Law was not designed to afford accident insurance with blanket coverage for any and all accidental injuries wherever and whenever received,[12] and the burden rested upon Heaton to show that his injury arose out of and in the course of his employment.[13] Without re-raking and resifting the facts, we conclude that the Industrial Commission quite reasonably and properly might have found, as it did, that Heaton's accident did not arise out of and in the course of his employment but that he was on a personal mission during his lunch hour when the accident occurred.[14]

Defendants'-respondents' motion to dismiss plaintiff's-appellant's appeal for failure to comply with Supreme Court Rule 1.08 is overruled, and the judgment of the

men's Compensation Law, Vol. 1, § 21.-21(a), p. 298. But, see Dunnaway v. Stone & Webster Engineering Corp., 227 Mo.App. 1211, 61 S.W.2d 398.

11. McMain v. J. J. Connor & Sons Const. Co., 337 Mo. 40, 85 S.W.2d 43; O'Dell v. Lost Trail, Inc., 339 Mo. 1108, 1117, 100 S.W.2d 289, 293; Gingell v. Walters Contracting Corp., supra, 303 S.W.2d loc. cit. 688. See also Hopkins v. J. I. Case Co., Mo., 293 S.W.2d 402, 407.

12. McFarland v. St. Louis Car Co., supra, 262 S.W.2d loc. cit. 348; McQuerrey v. Smith St. John Mfg. Co., 240 Mo.App. 720, 216 S.W.2d 534, 537(3); Stout v. Sterling Aluminum Products Co., supra, 213 S.W.2d loc. cit. 246(4); Huskey v. Kane Chevrolet Co., supra, 173 S.W.2d loc. cit. 639; Ricketts v. Story Laundry & Dry Cleaning Co., supra, 155 S.W.2d loc. cit. 539.

13. Toole v. Bechtel Corp., supra, 291 S.W.2d 879(1); Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5, 12(2); Duff v. St. Louis Mining & Milling Corp., 363 Mo. 944, 255 S.W.2d 792, 794(3); Fowler v. Baalmann, supra, 234 S.W.2d loc. cit. 16(6).

14. McMain v. J. J. Connor & Sons Const. Co., supra; Smith v. Seaman & Schuske Metal Works Co., 344 Mo. 559, 127 S.W. 2d 435; Koder v. Tough, Mo.App., 247 S.W.2d 876; Huskey v. Kane Chevrolet Co., supra; Kinkead v. Management & Engineering Corp., Mo.App., 103 S.W.2d 545. See also Hopkins v. J. I. Case Co., supra, and Stokes v. Four-States Broadcasters, Mo., 300 S.W.2d 426.

circuit court affirming the final award of the Industrial Commission denying compensation is affirmed.

McDOWELL and RUARK, JJ., concur.