William HACKER (Employee), Appellant,

v.

CITY OF POTOSI (Employer), and Hardware Mutual Insurance Company (Insurer), Respondents.

No. 30524.

St. Louis Court of Appeals.

Missouri.

Nov. 15, 1960.

Motion for Rehearing or for Transfer to Supreme Court Denied Dec. 13, 1960.

William B. Quinn and James K. Moran, St. Louis, for appellant.

Samuel Richeson, and Dearing, Richeson & Weier, Hillsboro, for respondents.

ANDERSON, Judge.

This is a proceeding under the Workmen's Compensation Law (Sections 287.-010–287.800 RSMo 1949, V.A.M.S.). Claimant is William Hacker, a police officer, employed by the City of Potosi. The respondents are the City of Potosi and its insurance carrier, Hardware Mutual Insurance Company. Claimant was injured by being shot by a person claimant was attempting to arrest for violation of the law. The shooting occurred outside the city limits. The referee of the Commission found that the accident did not arise out of and in the course of claimant's employment. Compensation was denied. On review before the full Commission, the award of the referee denying compensation was affirmed. Thereafter, an appeal was taken to the Circuit Court by claimant. The Circuit Court by its judgment affirmed the final award denying compensation. From this judgment claimant has appealed.

The record shows that the City of Potosi is a city of the fourth class, and was, on September 15, 1956, an employer operating under the provisions of the Missouri Workmen's Compensation Law. Claimant on said date was employed by the City of Potosi as a police officer, having theretofore been appointed to that office pursuant to a resolution of the Board of Aldermen. Claimant was also a deputy sheriff of Washington County.

On September 15, 1956, at about 2:00 a. m. claimant and Chief of Police Sutton were seated in an automobile which was parked near the County Jail located on High Street in the City of Potosi. High Street is a part of Highway No. 8. Claimant testified that while they were parked there he saw an automobile with only one headlight lit coming through town at a speed of between seventy and seventy-five miles an hour. This car ran through a red light at the intersection of High and Missouri Streets. As it passed the car in which claimant and Chief Sutton were seated, the latter said to claimant "Let's get him." The two officers immediately gave chase to this automobile, claimant driving. They pursued the automobile in question west on Highway No. 8. The car pursued continued at a rapid rate of speed with the officers following for about a mile or three-fourths of a mile. It then turned off Highway No. 8 and proceeded down a dirt road which led to a small house. Claimant and Chief Sutton followed. They, shortly thereafter, came upon the pursued automobile which had stopped. The car was empty when the officers arrived. The officers got out of their car and Chief Sutton looked inside the abandoned car. Claimant flashed a flashlight and discovered that the dirt road led to a house. A man was standing on the porch of this house. This man started shooting. Claimant was shot and lay down by the road. Chief Sutton took to the brush. Claimant was shot in the abdomen. This bullet was later removed by a surgeon. In the operation it was necessary to remove a portion of claimant's small intestine.

Appellant testified that he did not know the location of the western city limits. L. J. Kerrish, County Surveyor of Washington County, testified that from a survey plat he had prepared, the place where the shooting occurred was approximately 1,700 feet west of the city or corporate limits of Potosi.

The Industrial Commission in its final award made the following finding of fact:

"The employee was a duly appointed, qualified and acting Police Officer in and for the City of Potosi, Washington County, Missouri. He was also a duly appointed Deputy Sheriff in and for Washington County. Potosi is a city of the fourth class. At about 2:00 A. M., on the morning of September 15, 1956, he and the Chief of Police, one Sutton, were sitting in a squad car which was parked by the side of the county jail. They observed an automobile being operated at a high rate of speed and saw it run an automatic traffic signal. They gave chase. Unable to apprehend the driver of the fleeing vehicle inside the corporate limits of Potosi, they pursued him into the county. Some 1700 feet outside of the city limits, the fleeing misdemeanant took refuge in the residence of one Miller. As the employee approached the house he was greeted by a fusilade of rifle fire. One of these bullets struck the employee in the left flank. Subsequently he was hospitalized where it proved necessary to resect some eight or ten inches of the lower bowel."

In its conclusions of law the Commission held:

"While there may have been a causal connection between the conditions under which the employee's work as Deputy Sheriff was required to be performed and the resulting injury, there was no such causal connection between his work as a City Police Officer and the injury. The accident did not arise 'out of' his employment with the City of Potosi. Further, the injury did not occur at a place where the employee could reasonably be in his capacity as a City Police Officer, nor did it occur while he was reasonably fulfilling the duties of his employment as such City Police Officer or while he was engaged in doing something incidental to such duties. The accident did not arise 'in the course of' his employment with the City of Potosi."

It is contended that the court erred in affirming the award of the Industrial Commission. In support of this contention it is urged that the finding of the Commission is not supported by competent and substantial evidence. The sole question presented is whether under the admitted facts claimant's injury did or did not arise out of and in the course of his employment.

 Under our compensation law, the condition antecedent to an award of compensation is the occurrence of an injury by accident arising out of and in the course of employment. The phrases "out of the employment" and "in the course of the employment" are not synonymous, but are independent of each other, and proof of one does not establish the other. Smith v. Levis-Zukoski Mercantile Co., 223 Mo.App. 743, 14 S.W.2d 470; Jackson v. Euclid-Pine Inv. Co., 223 Mo.App. 805, 22 S.W.2d 849; Metting v. Lehr Const. Co., 225 Mo. App. 1152, 32 S.W.2d 121; Sweeny v. Sweeny Tire Stores Co., 227 Mo.App. 93, 49 S.W.2d 205. "* * * an injury may be said to arise 'out of' the employment, when it is reasonably apparent, upon a consideration of all the facts and circumstances, that a causal connection exists between the conditions under which the employee's work is required to be done, and the resulting injury." Smith v. Levis-Zukoski Mercantile Co., supra [223 Mo.App. 743, 14 S.W.2d 472]. See also Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S.W.2d 128; Cassidy v. Eternit, Inc., 326 Mo. 342, 32 S.W.2d 75; Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421; Goetz v. J. D. Carson Co., 357 Mo. 125, 206 S.W.2d 530; Conyers v. Krey Packing Co., Mo.App., 194 S.W.2d 749; Heaton v. Ferrell, Mo.App., 325 S.W.2d 800. "In other words, an injury arises out of the employment if it is a natural and reasonable incident thereof, even though not foreseen or anticipated; but, in all events, it must be

the rational consequence of some hazard connected therewith." Smith v. Levis-Zukoski Mercantile Co., supra. See also Jackson v. Euclid-Pine Inv. Co., supra; Brewer v. Ash Grove Lime & Portland Cement Co., 223 Mo.App. 983, 25 S.W.2d 1086; Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W.2d 601; Sweeny v. Sweeny Tire Stores Co., supra; Heaton v. Ferrell, supra.

 An injury arises "in the course of" the employment, when it occurs during the period of employment, at a place where the employee might reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in the performance of some task incidental thereto. Smith v. Levis-Zukoski Mercantile Co., supra; Wahlig v. Krenning-Schlapp Grocer Co., supra; Cassidy v. Eternit, Inc., supra; Crutcher v. Curtiss-Robertson Airplane Mfg. Co., 331 Mo. 169, 52 S.W.2d 1019; Foster v. Aines Farm Dairy Co., supra; Morgan v. Duncan, Mo., 236 S.W.2d 281; Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W.2d 563; Goetz v. J. D. Carson Co., supra; Conyers v. Krey Packing Co., supra. The phrase, "out of" the employment refers to the origin or cause of the injury, while "in the course of" the employment refers to the time, place, and circumstances under which the injury was received. Jackson v. Euclid-Pine Inv. Co., supra; Metting v. Lehr Const. Co., supra; Sweeny v. Sweeny Tire Stores Co., supra.

 The injury may be by accident arising out of and in the course of the employment, whether the risk be an ordinary or extraordinary one, so long as it bears a relation to the employment; whether it originates from within or outside of the employment, if the exposure to such risk is peculiar to the employment, and whether it originates from the negligent or reckless manner in which the employee himself performs the work, so long as the act is not wholly beyond and dissociated from his employment. Jackson v. Euclid-Pine Inv.

Co., supra; Metting v. Lehr Const. Co., supra; Sweeny v. Sweeny Tire Stores Co., supra; Griffin v. Anderson Motor Service Co., 227 Mo.App. 855, 59 S.W.2d 805. But where an employee goes outside of the sphere and scope of his employment, he is not acting in the course of his employment, and compensation in such a case will be denied. Fowler v. Baalmann Inc., Mo., 234 S.W.2d 11; Heaton v. Ferrell, supra; Brown v. Anthony Mfg. Co., Mo., 311 S.W. 2d 23.

In applying the foregoing principles to the facts before us we must determine what services William Hacker was obligated to perform under his contract of employment with the City of Potosi. Section 85.610 RSMo 1949, V.A.M.S. combines the office of marshal and chief of police in cities of the fourth class, and defines his powers of arrest. Under this section he may arrest, with proper process, for any offense against the laws of the city or state. It is also provided that he may make arrests without process, in all cases in which any offense against the laws of the city or the state shall be committed in his presence. Section 85.620 RS 1949, V.A.M.S. provides that in cities of the fourth class "The police of the city may be appointed in such numbers, for such times and in such manner as may be prescribed by ordinance. They shall have power to serve and execute all warrants, subpoenas, writs and other process, and to make arrests in the same manner as the marshal. The marshal and policemen shall be conservators of the peace, and shall be active and vigilant in the preservation of good order within the city."

In the case of City of Advance ex rel. Henley v. Maryland Cas. Co., Mo., 302 S.W. 2d 28, 31, the Supreme Court held that Section 85.610, supra, does not empower a city marshal, in cities of the fourth class to make an arrest beyond the city limits. In that case Westbrook, the city marshal, saw Henley drive an automobile past Westbrook's home in the City of Advance. Westbrook estimated the speed of the automobile to be 50 miles per hour. Several

hours later, Westbrook drove to Mutt's place beyond the city limits and there, as marshal of the City of Advance, without process, arrested Henley for a violation of the speed ordinance of said city. The Court held the arrest unlawful. The Court said:

"It is well established as a general rule that, in the absence of statute, municipal police officers have no official power to apprehend offenders beyond the boundaries of the municipality. 4 Am.Jur., Arrest, Sec. 51, p. 35; 6 C.J.S. Arrest § 13, p. 611. State ex rel. McNamee v. Stobie, 194 Mo. 14, 57, 92 S.W. 191, 201; Rodgers v. Schroeder, 220 Mo.App. 575, 287 S.W. 861, 863–864, and cases therein cited. Defendants seemingly concede the rule. They say, however, that section 85.610 R.S.Mo.1949, V.A.M.S., gave Westbrook the right to make the arrest.

\* \* \* \* \* \*

"This section does not empower the marshal to make an arrest beyond the city limits. In the case of Rodgers v. Schroeder, supra, the St. Louis Court of Appeals considered a statute identical in context with the statute here invoked by defendants in connection with the identical question with which we are presently concerned, except that it involved an arrest beyond the city limits for violation of a speed ordinance of a city of the third class. After careful analysis of the law and numerous decisions, the court declared, 287 S.W. 861, 863–864: 'The power of such officers to arrest without process, for mere quasi criminal offenses arising from the violation of ordinances is liable to serious abuses, and ought not to be enlarged by judicial construction beyond what is expressly granted or necessarily implied in the statute. It is clear that our statute does not expressly confer upon the marshal, assistant marshal, or policemen the power to make arrests without process beyond the limits of the city,

and we see nothing in the statute from which such power may be implied. \* \* \*

\* \* \* \* \* \*

" 'We conclude that the defendants were without authority to go beyond the limits of the city of Washington to effectuate the arrest of the plaintiff without process, \* \* \*. We are not concerned here, of course, with the power of marshals, assistant marshals, and police officers of towns and cities to make arrests for felonies.'

"The above case is well reasoned and is supported by the great weight of authority. We hold that the arrest of plaintiff by defendant Westbrook was unlawful."

█ In the Rodgers case the violation of the city ordinance was committed in the presence of the officers, who immediately gave chase and crossed the city limits in fresh pursuit. But, notwithstanding such facts, the court held the arrest unlawful. Under this decision there is no doctrine of fresh pursuit in cases involving the violation of city ordinances of cities of the third class. The same rule should apply to cities of the fourth class, since the statute construed in the Rodgers case is identical in context with the statute relating to the powers and duties of police officers in cities of the fourth class. The statute does not by its terms create the right of fresh pursuit, and none should be implied. Such statutes should be strictly construed since they are in derogation of individual liberty. Rodgers v. Schroeder, supra.

█ The evidence shows that the City of Potosi employed claimant as a police officer. Under the statutes and decisions construing same, his sphere of action as a police officer, as far as making arrests was concerned, was limited to the territory embraced within the city limits. Neither the chief of police nor any other city officer could enlarge his statutory authority. At the time he was injured he was attempting

to make an arrest outside the city limits. This was beyond the scope of his employment. Where an employee goes beyond the scope of his employment he is not acting in the course of his employment, and compensation in such a case will be denied. Fowler v. Baalmann, supra; Heaton v. Ferrell, supra; Brown v. Anthony Mfg. Co., supra.

The trial Court did not err in affirming the award of the Commission. The judgment appealed from is affirmed.

WOLFE, P. J., and RUDDY, J., concur.