**Edna DANIELS, Plaintiff-Appellant,**

v.

**KREY PACKING COMPANY, a Corporation, Defendant-Appellant.**

No. 48282.

Supreme Court of Missouri,

Division No. 1.

April 10, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied May 8, 1961.

**80**

Hough, Herrmann, Nichols, Hormberg & Filippine, Charles T. Herrmann, Clayton, for plaintiff-appellant.

R. C. Reis, St. Louis, for defendant-appellant.

## HOLLINGSWORTH, Judge.

Plaintiff, an employee of defendant, sustained personal injuries when she undertook to enter the storeroom of defendant's packing plant to obtain therefrom a meatcutter's knife for use in the course of her employment. After receiving workmen's compensation in the sum of $610 for the injuries so sustained by her, she brought this action at common law for damages for her said injuries. Her petition alleged that defendant maintained a store at which persons were invited to purchase the supplies therein kept; that a small door, hinged into and forming a part of a large sliding door, provided ingress and egress of persons invited into said storeroom as customers; that as she, a business invitee of defendant, was entering said store through the small door, defendant negligently caused or permitted the large sliding door to fall upon and injure her. Defendant's answer denied that the general public was invited into said storeroom and denied the negligence alleged in the petition and pleaded plaintiff's contributory negligence. The answer also affirmatively pleaded that the supplies kept in said storeroom were sold to defendant's employees only for their convenience and that plaintiff, when injured, was an employee of defendant and as such was covered by the provisions of the Workmen's Compensation Act of Missouri.

Plaintiff's reply was a denial of the new matter alleged in defendant's answer.

At the close of all of the evidence, defendant filed its motion for directed verdict, alleging, among other grounds, that, under the law and the evidence, plaintiff was an employee of defendant and subject to the provisions of the Workmen's Compensation Act and that the court did not have jurisdiction of the subject matter. The court indicated it had some doubt as to whether plaintiff had a common law action, but stated it would reconsider that matter after verdict, if necessary. The issues of defendant's negligence and plaintiff's contributory negligence were thereupon submitted to a jury, which returned a verdict finding those issues in favor of plaintiff and assessing her recovery at $37,500. Defendant filed motion for judgment in accordance with its motion for directed verdict and, in the alternative, for a new trial. The trial court sustained the motion for judgment, set aside the verdict and entered judgment for defendant, and, in the alternative, further ordered that if the judgment should be reversed on appeal and if within 10 days plaintiff would remit $17,500, the motion for new trial would be denied; otherwise, it was to be sustained on ground of excessiveness of the verdict. Both plaintiff and defendant appealed, each reasserting the contentions made in their respective pleadings.

It is admitted that defendant is a major employer, as that term is defined in the Workmen's Compensation Act, and was operating its packing plant at which plaintiff was an employee under the provisions of the Workmen's Compensation Act, Chapter 287 RSMo 1959,[1] V.A.M.S., at the time plaintiff was injured; and that plaintiff was also subject to the provisions and restrictions thereof. Necessarily, therefore, if plaintiff's injuries *arose out of and in the course of her employment,* defendant became liable only to furnish the compensation provided in the Act and stands

---

[1]. All statutory references herein are to said revision unless otherwise indicated.

freed of any other liability whatsoever. Section 287.120. As we understand plaintiff's brief, she does not contend otherwise. She does contend, however, defendant not only failed to support its affirmative plea of the applicability of the compensation act but that defendant abandoned that defense in failing "to submit the same in the form of an instruction to that effect."

The facts are not in dispute. Consequently, the question of whether plaintiff's injuries arose out of and in the course of her employment becomes a question of law for determination by the trial court. McFarland v. St. Louis Car Co., Mo.App., 262 S.W.2d 344, 346; Lupton v. Glenn's Oyster House, Mo.App., 266 S.W. 2d 53, 55 [1]; May v. Ozark Central Telephone Co., Mo.App., 272 S.W.2d 845, 849; Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628, 634–635. Defendant, therefore, was not in error in submitting that issue to the court instead of the jury. We turn then to the admitted facts to determine if plaintiff's injuries arose out of and in the course of her employment. If they did, the judgment must be affirmed, irrespective of all other questions raised in the briefs of either party.

Plaintiff had been intermittently employed by defendant at its meat packing plant, located at Twenty-First and Bremen Streets in North St. Louis, since 1953. She began the period of employment here involved on February 19, 1957, and sustained the injuries in question on February 21st thereafter. She was paid on an hourly basis. Her 8-hour work day began at 6:30 a. m. and ended at 3:00 p. m., with a half-hour (11:00 to 11:30 a. m.) off for lunch. She was permitted either to bring her lunch and eat it at the plant or to eat "in the restaurant across the street, or in the plant too at the restaurant." Her place of work was in the pork-trim department on the third floor of the plant. Her duties were to trim fat from pork by means of a knife similar to a butcher knife. She purchased a knife for that purpose at de-

fendant's storeroom at the plant on either February 19th or 20th. That knife proved to be too small for efficient use and she borrowed a knife (apparently from a fellow worker) which she used while waiting an opportunity to return the knife she had purchased to the storeroom to exchange it for a larger one. She could leave her job during working hours only with written permission.

On February 21, 1957, she brought her lunch to the plant when she came to work. At 11:00 o'clock she, carrying her lunch and the knife she desired to exchange, left the third floor of the plant, went to the street level of Twenty-First Street, which extends along the east side of the portion of the plant housing the pork-trim department, and crossed to the east side of Twenty-First Street to another portion of defendant's premises in which the lockers and restroom provided by defendant for its female employees are located. There she ate the lunch she had brought with her. Finishing the lunch at about 11:15, she, pursuing the most direct route, took the knife to the storeroom to exchange for a larger one.

She had been in the storeroom four or five times during the entire course of her employment and was familiar with its location and the entrance thereto. It fronts on and is located at 2105 Farrar Street, which extends east and west adjacent to and along the south side of defendant's plant. It is not open to the public, but is maintained by defendant for the benefit and exclusive use of its employees. There they may purchase at cost work clothing, such as caps, boots and frocks worn at their work for defendant, and utensils used by them in that work, such as knives, "steels", whetstones and other utensils. The exterior is constructed of upright board planking. The only entrance thereto is from the public sidewalk extending along Farrar. The entrance consists of a sliding door of the same material as the exterior wall. That door is 12 feet wide and 8 feet high, weighs 400 to 500 pounds, and is sus-

pended on a track immediately above its top, so that when it is slid to the east for the distance of its width, an entrance of about 12 feet in width is provided for the use of trucks, etc. For the use of defendant's employees, however, a small door, some two feet wide and 6 to 7 feet high is installed at street level in the center of the sliding door. Immediately above the small door appears a sign bearing words: "Krey Packing Storeroom 2105 Farrar." The small door is hinged from its right side (as one faces it from the street) and opens outward by pulling an ordinary doorknob affixed on its left side. On the morning of the day plaintiff was injured, defendant, without knowledge thereof on the part of plaintiff, moved the sliding door eastward beyond the limits of its tracks for the purpose of repair of the track upon which it was operated. The door was then left leaning against the portion of the storeroom wall to the east of the entrance while the repairs were being made.

Plaintiff, walking westward on Farrar, came to the door as it thus leaned against the wall. Not noticing that it had been removed from its track and was leaning against the wall to the east of the entrance, she grasped the knob of the small door and pulled outward to open it, whereupon the whole sliding door fell outward upon her, causing the injuries for which she was paid workmen's compensation and for which she, in this action, seeks compensatory damages.

Plaintiff insists that at the time she was injured she was an invitee of defendant and not subject to the provisions of the Workmen's Compensation Act, because: (1) the accident occurred during her lunch period when she was not in the course of her employment; and (2) there was no causal connection or relationship between her injuries and her employment. Cited in support of that contention are the following cases: McQuerrey v. Smith St. John Mfg. Co., 240 Mo.App. 720, 216 S.W. 2d 534; Stout v. Sterling Aluminum Products Co., Mo.App., 213 S.W.2d 244; McFarland v. St. Louis Car Co., Mo.App., 262 S.W.2d 344; Heaton v. Ferrell, Mo. App., 325 S.W.2d 800. We think none of them is in point or persuasive under the facts here shown. In McQuerrey, supra, it was held that where a trade association, of which the employer was a member, and the union, of which its employees were members, entered into an apprenticeship agreement for the training of apprentices, which agreement required classroom instruction before an apprentice could become a journeyman cabinet maker-millman, but which also contained a proviso that such classes were to be conducted in the evening, were not to be classified as work, and apprentices were not to be paid therefor, an apprentice attending such a class was not an "employee" within the meaning of the Workmen's Compensation Act and injuries sustained by him in such classwork did not "arise out of and in the course of employment." [213 S.W.2d 247]. In Stout, supra, it was held that injuries sustained when the employee fell in a public park while attending a picnic sponsored by his employer, but which the employee was not required to attend and would suffer no penalty if he did not, were not caused by any risk arising during the course of his employment. In McFarland, supra, the court held that the employee's injuries, sustained when he, a member of a team consisting of his fellow employees, was playing softball after working hours and away from the place of his employment, neither the team nor the game having been initiated by the employer or connected with its affairs or subject to its control, but which team and game were organized and played solely for the personal diversion and recreation of the employees, were not compensable within the meaning of the compensation act. In Heaton, supra, the claimant, employer's service station manager, with no duty to make deliveries and without any prior knowledge on the part of his employer that such deliveries had been made, loaded 50 gallons of kerosene from employer's truck into employee's pickup truck (which he used in going to and from his

noonday lunch) and took it to his own home. While returning to his work, after lunch, the truck collided with a train and claimant was injured. Held: claimant's injuries did not arise out of or in the course of his employment.

■ In the instant case plaintiff's injuries unquestionably arose "out of" her employment. Her contract of employment not only required her to furnish the knife or knives with which she worked, but defendant, by maintaining a storeroom whereat she could purchase them, implicitly invited her to enter it by the means made available by defendant for her to do so. Her petition for damages not only pleads these facts, but she, by her own testimony, developed the necessity of her going to that storeroom on the day she was injured for the purpose of obtaining a knife suitable and necessary for the performance of her duties in exchange for an unsuitable one. Therefore, the question is: Did her injuries, as a matter of law under the admitted facts, arise "in the course of" her employment? We are convinced they did.

■ The term "arising * * * in the course of his employment", as used in the Act, does not require that the employee be directly engaged in the task with which he is primarily charged. It is only necessary to establish that the task in which the employee was engaged, and as a result of which he was injured, was incident to the conditions of his work or that he was injured in doing an act reasonably incidental to the performance of his duties, of which his employer might reasonably have knowledge or reasonably anticipate. Ricketts v. Story Laundry & Dry Cleaning Co., Mo. App., 155 S.W.2d 536, 539; Jackson v. Euclid-Pine Investment Co., 223 Mo.App. 805, 22 S.W.2d 849, 851. A case illustrative of these principles is that of Blair v. Armour & Company, Mo.App., 306 S.W.2d 84. There a utility butcher employed in a packing plant in the "cattle kill" department, was required to sharpen the knives furnished by his employer by the use of grindstones maintained in its plant for the use of such employees. In order to accomplish that task, claimant voluntarily came to the plant two hours ahead of the hour at which his compensable labor began. During that period and while sharpening his knives on one of the grindstones furnished by his employer, he sustained an eye injury. The court held he was entitled to compensation, citing numerous cases and quoting from Larson's Workmen's Compensation Law, Vol. 1, § 21.60, p. 313, as follows: "'The course of employment, for employees having a fixed time and place of work, embraces *a reasonable interval* before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts, * * *. The rule is not limited to activities that are absolutely necessary; it is sufficient if they can be said to be reasonably incidental to the work.'"

■■ Now in this case, it is true that plaintiff was injured during her lunch period, for which period she received no compensation. By the great weight of authority, it is held that injuries occurring *on the premises* during a regular lunch hour arise "in the course" of employment, even though the interval is technically outside the regular hours of employment in the sense that the worker receives no pay for that time, if such injuries are traceable to dangers inherent in the employment environment. Larson's Workmen's Compensation Law, Vol. 1, §§ 21.21(a) and 21.21(b), pp. 298–301. See also Thompson v. Otis Elevator Co., Mo.App., 324 S.W.2d 755, 758; Toole v. Bechtel Corporation, Mo., 291 S.W.2d 874, 879. It is also generally held that where, as here, the employee has a definite work place and his compensable time of work does not include his lunch period, an injury sustained *during a trip away from the premises* for the purpose of getting lunch and having no purpose reasonably incidental to his employment is not compensable. But that rule is not applicable where the employee during that period

performs a special task, service or errand in connection with his employment. Heaton v. Ferrell, Mo.App., 325 S.W.2d 800, 805; Larson's Workmen's Compensation Law, Vol. 1, § 15.51, p. 213.

One of the contentions made by plaintiff in her brief is that she "did not suffer the injuries complained of while she was engaged *in or about the premises* where her duties were performed, or where her services required her presence * * *." Upon examination of the facts, we think that contention cannot be sustained. Plaintiff was permitted the use of the locker room in which to eat her lunch as an incident of her employment. The fact that the place so provided by defendant necessitated her crossing a public street to *another portion of defendant's plant premises* would seem clearly not to lessen its obligation and duty under the compensation law to plaintiff to the same extent as if she had eaten her lunch in the room or area in which she performed her duties of trimming pork. So, likewise, may it be said that, under the facts shown in this case, when she left the portion of the premises where she ate her lunch and went to the storeroom, concededly another portion of defendant's plant premises, and was in the act of opening the only door to that room, she was still upon, or, at least, *about* the premises of her employer. Especially is that conclusion justified when it is borne in mind that plaintiff was exposed to the same hazard incident to her employment when she walked to the storeroom *from the locker room* as she would have been had she walked directly to the storeroom from the pork-trim department. In either event, her course of travel was necessarily the same, to wit: along the public sidewalk on Farrar Street to the entrance of the storeroom.

But if we assume, for the purpose of this opinion, that when plaintiff left the pork-trim department, taking with her both her lunch and the knife which she intended to exchange, she thereby left the defendant's premises on a trip for two purposes, one personal to herself, to wit: the eating of her lunch, and the other directly incidental to and in connection with her employment, to wit: the exchange of said knife for another at defendant's storeroom, we think the result is the same. In such a situation, this court has applied the test laid down by Mr. Justice Cardozo in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183(2): "To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk." See Heaton v. Ferrell, 325 S.W.2d 800, 806, and cases cited in footnote thereto.

The fact that plaintiff took the knife which she desired to exchange along with her lunch when she left the pork-trim department leads to but one conclusion: that plaintiff was imbued with the fixed purpose of completing both errands, one of which was made necessary by her work, to wit: the exchange of knives to enable her efficiently to perform her duties. That she had fulfilled the personal task and was in the act of completing the task made necessary by her work when injured bespeaks a fixed purpose to complete both and that the latter task would have gone forward irrespective of where she ate her lunch.

Our conclusion is that whether plaintiff may or may not have left defendant's premises in effecting the exchange of knives she, in either event, when injured, was at a place where she reasonably was required to be in the performance of a task directly and reasonably incidental to her employment and, so being, it must be held that the in-

juries sustained by her arose out of and in the course of her employment.

The judgment of the trial court is affirmed.

All concur.