CARL IRVIN MCQUERREY, RESPONDENT, v. SMITH ST. JOHN MANUFAC-
TURING CO., AND LIBERTY MUTUAL INSURANCE COMPANY, APPEL-
LANTS.—216 S. W. 2d 534.

Kansas City Court of Appeals. Opinion delivered December 6, 1948.

*Don M. Jackson* and *Frank O. Benson* for appellants.

*William C. Reynolds, Paul C. Sprinkle, William F. Knowles,* and *Sprinkle & Knowles* for respondent.

722

CAVE, P. J.—This is an appeal from the judgment of the Circuit Court of Jackson County affirming an award of the Industrial Commission in favor of the claimant-employee.

No question is raised concerning the pleadings, the injuries, or the amount of the award, so no reference will be made to such matters. The assignments of error challenge the sufficiency of the evidence to sustain the award. There are no disputed facts because most of the evidence consists of three written instruments. The controversy concerns the construction of such instruments.

Prior to the occurrence here involved there were, in Kansas City and vicinity, 17 firms and individuals, engaged in millwork and cabinet manufacturing, of which defendant-employer was one. They had organized the "Millwork and Cabinet Manufactures' Association, Inc." This organization will be referred to as the *Association*. There was also in this community a labor union called "United Brotherhood of Carpenters and Joiners of America." This organization will be referred to as the *Union*. The *Association* and the *Union* had adopted certain rules and regulations for the employment and instruction of apprentices. These rules and regulations were designated as "Standards of Apprenticeship for Cabinet Makers, Stair Builders and Millmen." That instrument will be referred to as the *Standards*. Included in the Standards was an approved copy of an "Apprenticeship Agreement." Claimant and the defendant executed one of such *Agreements*. The contract provided that the apprentice and the employer desired to enter into an Apprenticeship Agreement in conformity with the provisions of the Standards, which were made a part of the agreement. The contract further provided "that the Employer will provide *employment* and *training opportunities* in accordance with the Standards * * * for the purpose of enabling said apprentice to learn and acquire the trade of Cabinet Maker-Millman. * * * the Apprentice agrees to perform diligently and faithfully the work of said trade or craft during the period of apprenticeship, complying with the training program contained in said Standards. * * * That the Apprenticeship term begins on * * * and terminates upon the completion by the Apprentice of 8,000 hours of *employment* in said trade or craft, as stipulated in said Standards. *Time spent in related instruction shall not be considered hours of work and the Apprentice shall not receive pay for time so spent."* (Italics supplied).

There was also a contract between the Association and the Union providing, among other things, that all Apprentices employed by a member of the Association shall be members in good standing in the Union; and that 8 hours shall constitute a day's work for said Apprentice to be performed between the hours of 8 a. m. and 5 p. m.; and 5 days shall constitute a week's work, commencing at 8 a. m. Monday and ending not later than 5 p. m. the following Friday.

The Standards of Apprenticeship Code provided for the establishment of a "Joint Apprenticeship Committee," which Committee consisted of three members and an alternate selected by the Association, and three members and an alternate selected by the Union. We shall refer to this group as the *Committee*. The Standards Code also provided that before an Apprentice could complete his apprenticeship he must have 8,000 hours of reasonably continuous *employment, supplemented by a mimimum of 576 hours of related classroom instruction*. The Apprentice was required to "furnish such hand tools as are necessary in the various operations in the learning of his trade." There also was set out a work schedule designating the type and character of work to be done and the number of hours to be spent thereon during the first four years of the apprenticeship, which hours total the required 8,000. The Standards Code also required the Apprentice to "enroll in an approved school selected by the *Committee* and regularly attend at least 144 hours per year the classes provided for his instruction in subjects related to the trade." If he failed to do so, without good cause, the *Committee* could suspend or revoke the agreement; and it also provided, "Hours of *related instruction* shall not be considered as hours of *work*."

It is stipulated that the Committee made an arrangement with the Board of Education of Kansas City for claimant to attend a course in Vocational Training at Manual High School two evenings each week, between 7 p. m. and 9 p. m.; that these evening classes were conducted under the supervision of the *Board of Education* of Kansas City; that the tools used in connection therewith belonged to the public school system, and that the materials used were furnished by the Committee; that while claimant was attending one of these evening classes he was using a shaper and caught his right index finger in the rotating blades, resulting in a loss of a portion of that finger, for which compensation is claimed. This schooling is what the contract and Standards Code refer to as "related instruction."

The question presented is whether the evidence discloses that claimant's injuries "arose out of and in the course of his employment," as required by Sec. 3691, R. S. 1939. The basic contention of the employer is that the relation of employer and employee did not exist between it and the claimant *at the time of the injury;* that there is nothing in the written instruments, above referred to, providing for the employer to have any connection with, obligation concerning, or right of control of the Apprentice while attending *classroom work;* that all things relating to the instruction program in the High School concerned the Apprentice, the Committee and High School authorities.

In general terms, the compensation law entitles an employee to compensation for any injury by accident arising out of and in the course of his employment, and the law should be liberally construed in furtherance of that end. But liberality does not authorize the

allowance of a claim that lacks some of the essential elements required by the Act. No all-embracing definition of the phrase, "arising out of and in the course of his employment," has yet been framed, and every case involving this phrase should be decided upon its own peculiar facts and circumstances and not by reference to some formula. Wamhoff v. Wagner Elec. Co., 190 S. W. (2d) 915, 917, 354 Mo. 711; Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601, 605. In Walhig v. Krenning-Schlapp Gro. Co., et al. 325 Mo. 677, 29 S. W. (2d) 128, 130, the court said:

"It has been quite uniformly held that an injury arises 'out of' the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury; and that an injury to an employee arises 'in the course of' his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto." See, also, Watson v. Pitcairn, 139 S. W. (2d) 552.

There is a multitude of cases cited under Secs. 3961 and 3695 defining and applying the above quoted clause to a varied set of facts, but it would serve no useful purpose to discuss and distinguish them. The parties concede they have found no reported case discussing a set of facts such as we have here.

All of the above written instruments declare that claimant's attendance at *school classes* in the evening was not "work" and that he was not to be *paid therefor*. His work day, so far as the employer was concerned, began at 8 a. m. and was concluded at 5 p. m., for which he was paid an hourly wage. The Standards Code requires the employer to "designate a particular person *in the shop* to be known as the Supervisor of Apprentices", who shall be responsible, with the advice of the Committee, for the apprentice's *work* experience and the recording of same in the record form supplied for that purpose. This would indicate that the employer is responsible for the *training* of the Apprentice while he is *in the shop* and during working hours. The Standards Code also requires that the *Apprentice shall enroll* in an approved school selected by the Committee and attend classes for at least 144 hours per year and if he fails to do so, the *Committee* may suspend or revoke the Apprenticeship Agreement. Nowhere is the employer charged with the duty or responsibility of seeing that he enrolls or attends classes or does efficient work. The place and terms and conditions, as well as the tools and materials with which he carries on his training in the classroom, are provided by the Committee and the School Board. It is stipulated that "these evening classes were conducted under the supervision of the Board of Education through the Department of Vocational Education of Kansas City." The employer has no authority to supervise or control the apprentice's

conduct at school classes or the conditions and circumstances under which his instruction is carried on. Under such a state of facts, can it be said that claimant's injuries arose "out of and in the course of his employment, * * * "? We think not.

Sec. 3695 defines *employee* as "every person in the service of any employer, * * * under any contract of hire, express or implied, oral or written, or under any appointment or election, * * *." Sec. 3694 (a) defines *employer* as "every person * * * using the service of another for pay." The phrase, "using the service of another for pay," means the *right to control* the means and manner of that service, as distinguished from the results of such service. Rutherford v. Tobin Quarries, 82 S. W. (2d) 918, 923; Stein v. Battenfield Oil and Grease Co., 327 Mo. 804, 39 S. W. (2d) 345. Maltz v. Jackoway-Katz Cap Co., 82 S. W. 909. The compensation law was never designed to operate as accident insurance with blanket coverage as to any and all accidental injuries wherever and whenever received by an employee; to the contrary, it applies only to accidental injuries arising out of and in the course of the employment. The relationship of master and servant must exist in any case to make it compensable, and when that relationship ceases to exist, either temporarily or permanently, the liability of the employer for accidental injury to the employee ceases to exist. Stout v. Sterling Aluminum Products Co., 213 S. W. (2d) 244, 246.

We are of the opinion the employer in this case was not required to furnish claimant with the *classroom* work referred to. That was a requirement or condition imposed on every apprentice by the Association and the Union, before he could become a Journeyman Cabinet Maker-Millman. Such outside instruction was for the benefit of the apprentice and not for any particular employer. The parties themselves recognized the distinction to be made between *working* for and *training* under the direction of an employer and that of *classroom instruction*. These were treated as separate items or duties in all the written instruments defining the relationship. The time spent on each project was recorded under separate headings. We do not agree with claimant's contention that, at the time of his injury, he was at a place he was required to be by his employer. The contract of employment obligated the employer to provide *employment* and *training opportunities*. We think these obligations refer to the time spent and the work done in the employer's plant and while the apprentice is under the control and guidance of the designated foreman "in the shop", and not to the time and place of classroom instruction.

It would be an intolerable situation to hold an employer liable for accidental injuries when he had no right to supervise and control the conditions and circumstances under which the employee was working at the time of his injury. It is true our courts have gone far in holding an employer liable for accidental injuries to an employee when not on

726

the premises of the employer. But the underlying theory of those cases is that the employee is about his employer's business, or is on his way to or returning from a place where his employment required him to be. We have considered the cases relied on by claimant but are of the opinion that the facts make them inapplicable.

Having concluded that the claimant was not an *employee* of the employer at the time of his injury, and that the employer did not have the right to control the means and manner of the service or work he was doing at that time, the injury did not "arise out of and in the course of his employment."

It follows that the judgment should be reversed and the cause remanded to the circuit court with directions to reverse the final award of the Industrial Commission. It is so ordered. All concur.