Mildred L. WILSON, Respondent,

v.

EMERY BIRD THAYER COMPANY and Commercial Union Insurance Company of New York, Appellants.

No. 24482.

Kansas City Court of Appeals.

Missouri.

April 4, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 6, 1966.

Fred H. Metcalf, Kansas City, for appellants.

Theo C. Anderson, Kansas City, for respondent.

CROSS, Presiding Judge.

This case arose as a claim under the Workmen's Compensation Law. The employer, Emery Bird Thayer Company and its insurer have appealed from a judgment of the circuit court affirming the Industrial Commission's final award of compensation benefits in the total sum of $3,246.50 to claimant-employee, Mildred L. Wilson. The facts pertinent to the issues for decision are here set out and will be considered in the light most favorable to the prevailing party. Harper v. Home Imp. Co. et al, Mo. Sup., 235 S.W.2d 558.

Claimant testified that on April 27, 1964, and for more than twelve years prior to that date, she was employed by Emery Bird Thayer Company as chief operator of its telephone switchboard. In that capacity

she supervised the switchboard and two other operators. On the day above named, at some time between 4:30 and 5:00 P.M., claimant relieved the operator who had previously been on duty. Working alone, claimant proceeded to operate two "positions"—her own which directly faced her as she was seated upon a tall "operator's" chair, and the position next adjacent on her right which is identified as the "second position". Each position was a panel of connecting apparatus about two feet wide normally facing the operator to which it was assigned. While so working, claimant reached over to the "second position" to make some "disconnects" by pulling the connecting plugs out of the "jacks" they were in. As claimant "jerked" one of the plugs out, her feet slipped on a metal foot rail, she lost her balance, and she fell in a twisting position from her own operator's chair onto and against the chair next to her, knocking off her headset which fell to the floor. Within a few minutes she suffered pain in her neck, arm and shoulder. She quit work at five o'clock and went home. Her pain was severe that night and became progressively worse. Next morning her daughter called the employer by telephone and gave notice of the accident. At the employer's direction claimant consulted Dr. Flanders, who was the company physician. Dr. Flanders initially treated her on April 28th, 29th and 30th, and then made an appointment for May 5th for claimant to consult Dr. Barnard, an orthopedic doctor with the Dixon-Dively Clinic. Claimant was not consulted as to the selection of Dr. Barnard and had nothing to do with securing the appointment.

Dr. Barnard examined claimant and proceeded to treat her at the clinic. She was given traction and other therapy. Her condition did not improve and on June 29th she entered St. Luke's Hospital on the advice of and through arrangements made by Dr. Barnard. She was there placed in traction and otherwise treated under the care of Dr. Barnard, until the date of her release from the hospital on July 3, 1964.

She continued to see Dr. Barnard at the Dixon-Dively Clinic until he released her on September 21, 1964. During this time she was still having pain and complained of trouble she was having in opening her jaws. This was a condition diagnosed as having resulted from the traction she had undergone in the course of her treatment. This jaw condition did not exist prior to her entry in the hospital. In dismissing claimant, Dr. Barnard informed her he could do nothing further for her jaw complaint.

Claimant further sought relief from the pain and disability of her jaw at K. U. Medical Center and from various other physicians, dentists and oral surgeons. She was advised by Dr. McCoy that she needed surgery to relieve the jaw injury. She was unable to avail herself of the recommended operation because she "didn't have any money to pay for it".

It appears by stipulation into the record that "the insurer cut off all medical treatment as of May 20, 1964". At some time, which is not clearly shown, appellants advised the Dixon-Dively Clinic that they would not pay the cost of claimant's medical services after the date above noted. Claimant testified that this fact did not become known to her until early in June, 1964. Notwithstanding, claimant continued to receive the services and treatment (including hospitalization) from doctors which had been selected by appellants, until her release by Dr. Barnard on September 21, 1964. In so doing, and by reason of the employer's refusal to pay for those medical services, she became obligated to pay medical bills totalling $596.50 for medical and hospital services received within the 90 day period and $128.50 for services received thereafter (for which no claim is made).

Claimant presently complains of pain in her back, neck, shoulder and arm, and that she still has the trouble with her jaw, accompanied by "terrible bad earache". She attributes her back pain and jaw condition to the traction she received. She has not

returned to work since she sustained her accident and injuries.

Dr. Duncan examined claimant twice and testified on her behalf. He stated that she was suffering from subacute sprain of the neck, upper back region and upper extremity, ("which patient states is due to her occupation in performing her regular work"), aggravated by the contusion and sprain received April 27, 1964 when she slipped and fell against the adjoining chair. It was Dr. Duncan's opinion that claimant's back condition and the injury to the temporomandibular joint (her jaw condition) could have been caused by the traction she received in treatment following her fall and injuries received April 27, 1964. Dr. Duncan testified that as of April 5, 1964 (the date of the hearing before the referee) claimant had a 15 per cent permanent partial disability of the body as a whole.

Dr. Pipkin examined claimant once and testified on behalf of the employer and insurer. He stated that in his opinion claimant had limitation of shoulder motion amounting to 25 per cent arising from an arthritic condition. The fall she had on April 27, 1964 could have aggravated that condition. Dr. Pipkin additionally found some limitation of motion in claimant's cervical spine, disability in her shoulder and arm, and some limitation of motion in her right leg. He did not X-ray claimant's temporomandibular joint because he understood "she was to see a specialist about her jaw".

The referee found that claimant had sustained an accident which arose out of and in the course of her employment with Emery-Bird-Thayer, and in which she received injuries resulting in 10 per cent permanent partial disability. The referee awarded compensation accordingly in the total sum of $1700 and an additional lump sum of $200 for facial disfigurement, but denied claimant an allowance for medical aid expenditures she had made and further denied compensation for a healing period during the 90 day period following the accident.

On final hearing the Industrial Commission made findings of fact and conclusions of law as follows:

"We find from all the credible evidence upon the whole record that Mildred L. Wilson, Employee, sustained injury to her arm, shoulder, upper back, temporomandibular joint and body as a whole as a direct result of an accident arising out of and in the course of her employment with Emery Bird Thayer Company on April 27, 1964.

"We further find from such evidence that Employer and Insurer had notice that Employee sustained a compensable accident on April 27, 1964 and that they refused to provide Employee with necessary medical and hospital treatment to cure and relieve her from the effects of her said injury within the first ninety days following said accident and injury on April 27, 1964, and the Employee was required and did procure such medical and hospital treatment at a cost of $596.50 to her within said ninety day period and the Employer and Insurer are hereby ordered to pay said sum to the Employee. Tr. 78, Slider v. Brown Shoe Company, 308 S.W.2d 306, l. c. 310; Tr. 88 and 89.

"We further find that Employee sustained temporary total disability as a direct result of the aforesaid accident for a period of twenty weeks and that the Employee is entitled to said twenty weeks temporary total disability as a healing period. Tr. 50, 57 and 59.

"We further find from such evidence that Employee sustained ten per cent permanent partial disability to her body as a whole as a direct result of said accident".

On the basis of the quoted findings and conclusions, the Industrial Commission made its final award allowing claimant the total sum of $1700 for permanent partial disability, $596.50 for the value of medical aid not furnished by the employer or insurer, and $950.00 as compensation for a healing period of 20 weeks.

Appellants make no complaint of the findings of fact made by the Industrial Commission. Nor do they question the Commission's award to claimant totalling $1700 for permanent partial disability. In fact, the final statement in appellants' brief is that "the award of the referee should be reinstated". Appellants' brief contains only one point, which is presented in the form of a question, as follows: "Is the employer and insurer liable for costs of medical treatment and increased disability caused by that treatment when the employer refused to authorize it? The same arguments apply to the healing period which is in dispute". As developed in argument, appellants take the position they are not liable (1) for the cost of medical treatment received by claimant after May 20, 1964, (2) for aggravation of her accidental injury resulting from treatment received by her after that date, or (3) for an award for any additional healing period due to such increased disability. We consider these submissions in the order stated.

 The right of an injured employee to receive medical, surgical and hospital treatment, and the incumbent duty upon the employer to provide those services, were defined by V.A.M.S., Section 287.140 in effect at the time in question, quoted in pertinent part as follows:

"In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical and hospital treatment, including nursing, ambulance and medicines, as may reasonably be required for the first ninety days after the injury or disability, to cure and relieve from the effects of the injury, and thereafter such additional similar treatment as the commission by special order may determine to be necessary. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense".

The duty of the employer to provide treatments so required by statute is *unqualified*

*and absolute.* See Johnson v. Kruckemeyer, Mo.App., 29 S.W.2d 730. In Slider v. Brown Shoe Co., Mo.App., 308 S.W.2d 306 (cited by the Commission in its findings) the court interpreted Section 287.140 as follows:

"Under Section 287.140 RSMo 1949, V. A.M.S. (as amended), an employer has the privilege in the first instance of designating and selecting the physician and hospital to render the care required by the statute. However, if an employer, with notice that an employee has sustained a compensable accident (Aldridge v. Reavis, Mo.App., 88 S.W.2d 265, 267(4)), *refuses or neglects* to provide or tender necessary medical or hospital treatment, the injured employee need not lie helpless or in pain; but, in such circumstances, the employee may procure necessary treatment (within the statutory limitations) and have an award against the employer for the reasonable cost thereof". (Emphasis supplied.)

Also see Hammett v. Nooter Corp. (App. 1954) 264 S.W.2d 915; Evans v. Chevrolet Motor Co. (1937) 232 Mo.App. 927, 105 S. W.2d 1081, transferred, Sup., 102 S.W.2d 594; Schutz v. Great American Ins. Co. (1937) 231 Mo.App. 640, 103 S.W.2d 904; and Klasing v. Fred Schmitt Contracting Co. (1934) 335 Mo. 721, 73 S.W.2d 1011.

 Appellants cannot complain in this case that the employer was denied the right to select the physicians or other agencies of treatment for claimant. She cannot be charged with any refusal to accept the treatment offered by the employer. Nor at any time within the 90 day period did she seek the services of any physician other than those of her employer's choice. On the day following her injury she placed herself in the hands of Dr. Flanders, the employer's physician, at its direction, and in turn accepted the treatment of Dr. Barnard who was selected by Dr. Flanders. While she was under Dr. Barnard's care and prior to her release by him, the appellants arbitrarily, and without any justifica-

tion shown, "cut off all medical treatment as of May 20, 1964". Under these circumstances claimant was at liberty to procure her own necessary treatment "and have an award against the employer for the reasonable cost thereof". Slider v. Brown Shoe Co., supra. Notwithstanding she had the right to select other doctors and agencies of treatment, she chose to remain with the physicians the employer had originally chosen. Accordingly she continued to accept medical treatment from Dr. Barnard and received hospital treatment upon his advice and by his arrangement. Appellants have refused to pay for those services and claimant has obligated herself to do so. It is convincingly apparent from the record that the services were reasonably necessary. The amounts of charge therefor and their reasonableness have not been questioned. It is our view that these facts constitute competent and substantial evidence sufficient to support the Commission's finding that the employer "refused to provide the Employee with necessary medical and hospital treatment * * * within the first ninety days * * *", and to justify the Commission's award to claimant of a sum representing her expenditures to procure such treatment. The Commission has correctly interpreted and applied V.A.M.S., Section 287.140.

We next consider appellants' contention that the employer is not liable for "the increased disability" caused by the treatment of claimant's injuries, which consist principally of the "new condition in her jaw". The substance of appellants' argument on this question is as follows: "It is the appellants' contention here that the refusal to provide further treatment is an act of control of the medical situation and as such constitutes such an intervening event as to break the chain of causation giving rise to compensability for the new condition".

It is a well established rule in workmen's compensation law that "injuries which follow as legitimate consequences of the original accident are compensable, and such accident need not have been the sole or direct cause of the condition complained of, it being sufficient if it is an efficient, exciting, superinducing, concurring, or contributing cause". Manley v. American Packing Co., 363 Mo. 744, 253 S.W.2d 165. As stated in 1 Larson, Workmen's Compensation Law, Sec. 13.11, p. 192.59: "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct". Thus, "Where, without the fault of the employee, his original compensable injury is aggravated by medical or surgical treatment, there is such a causal connection between the original injury and the resulting disability or death as to make them compensable * *." 99 C.J.S. Workmen's Compensation § 207, p. 670, citing Schumacher v. Leslie, Mo.Sup., 232 S.W.2d 913, (cited and relied upon by appellants).

Concededly, and as all well reasoned authority recognizes, there must be no intervening independent cause to break the chain of causation between the new injury or aggravation and the original injury in order that liability be imposed upon the employer for the consequential results. However, we do not accept appellants' theory that their "refusal to provide further treatment" constitutes the requisite "break" in the chain of causation necessary to relieve them from liability for claimant's additional injuries. The "refusal" relied upon has significance only as an attempted disclaimer of liability for the *cost* of additional treatment for claimant and relates only to the *abstract* matter of monetary obligation to pay for those services. Appellants' "refusal" had no impingement or effect whatsoever on the *physical* aspects of the causation here considered. The chain of causal events producing claimant's additional injuries was consecutive, uninterrupted and complete and did not include the employer's disclaimer of legal duty. According

to undisputed evidence the sequence of causation began with the accidental injury, progressed through medical treatment administered claimant by physicians of appellants' selection, and culminated in the aggravation of injury resulting from traction treatment while claimant was still under their care—all without intervention of any other efficient, intervening, independent agency destroying the connection, and without fault on the part of claimant. We rule the instant question in accordance with these views. Appellants have cited no relevant authority to the contrary.

In view of our rulings above made, it is necessarily our further determination that appellants' refusal to provide claimant

medical, surgical and hospital treatment within the first 90 days, as required by law, imposed no limitation on the Commission's statutory authority to award claimant twenty weeks' temporary total disability as a healing period.

It is our final conclusion that the findings, conclusions and award of the Commission, in all aspects, are adequately supported by competent and substantial evidence, are not contrary to the overwhelming weight of the evidence, and rest upon a sound interpretation and proper application of the law.

The judgment is affirmed.

All concur.