**Patrick D. BEAR, Appellant,**

v.

**ANSON IMPLEMENT, INC., Second Injury Fund, Respondents.**

**No. WD 54837.**

Missouri Court of Appeals,
Western District.

July 21, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 1998.

Application for Transfer Denied
Oct. 20, 1998.

John Robert Fox, Wyandotte, Kansas City, for Appellant.

Joan Klosterman, Kansas City, for Anson Implement.

Thomas J. Walsh, Kansas City, for Second Injury Fund.

HANNA, Presiding Judge.

The Department of Labor and Industrial Relations Commission affirmed the decision of the administrative law judge, denying Patrick Bear's worker's compensation claim for injuries he received in an automobile accident. Mr. Bear contends on appeal that his injuries, which occurred as a result of an automobile accident on his way home from medical treatment he was receiving for a prior workers' compensation injury, were compensable.

The stipulated facts are that Mr. Bear sustained a work-related injury on January 7, 1993. As a result of his injuries, he received treatment from an employer-authorized neuropsychologist, Whitney Sunderland, at Truman Medical Center East. This accident arose out of and in the course of Mr. Bear's employment.

Mr. Bear returned to work still under the rehabilitative care of Dr. Sunderland. Five days after returning to work, on January 24, 1994, Bear's employer released him from work at 4:00 P.M. in order to go to an appointment at Truman Medical Center East.[1] He attended his 5:00 P.M. appointment, and then drove home. While driving along 24 Highway, he was struck by a vehicle travelling west in the eastbound lane. As a result of this second accident, which is the subject of this claim, Bear received injuries to his left leg and hip socket, requiring surgical procedures to repair the injuries.

Mr. Bear filed a claim for compensation for the injuries he received as a result of the automobile accident on August 25, 1994. On November 4, 1994, the administrative law judge determined that Bear's injuries from the second accident "are not compensable under Missouri Worker's Compensation Law because his injuries did not 'arise out of' nor were they incurred 'in the course of' his employment." The commission's decision is affirmed.

■ The issue presented is whether Bear's injuries, resulting from an automobile accident which occurred on the way home from an employer-authorized medical appointment occasioned by a prior compensable accident, are compensable. Specifically, did the second accident arise out of and in the course of employment?

■ In order to receive workers' compensation benefits, the claimant must show that his injury was caused by an accident "arising out of" and "in the course of his employment." *See* § 287.120.1, RSMo Supp. 1996; *Mann v. City of Pacific,* 860 S.W.2d 12, 15 (Mo.App.1993). "Arising out of" the employment relationship requires a "causal connection between the conditions under which the work is required to be performed and the resulting injury." *Abel by and Through Abel v. Mike Russell's Standard Serv.,* 924 S.W.2d 502, 503 (Mo. banc 1996)(quoting *Kloppenburg v. Queen Size Shoes, Inc.,* 704 S.W.2d 234, 236 (Mo. banc 1986)). "An injury occurs 'in the course of employment, if the injury occurs within the period of employment at a place where the employee reasonably may be fulfilling the duties of employment.'" *Abel,* 924 S.W.2d at 503 (quoting *Shinn v. General Binding Corp.,* 789 S.W.2d 230, 232 (Mo.App.1990)).

Mr. Bear contends that his trip to and from medical treatment for the prior injury, was a natural and probable consequence of the prior injury and, as such, arose out of and in the course of his employment. The employer responds that Bear's second accident lacks a causal connection with his employment. Because Bear was travelling to his home at the time of the automobile accident, the employer argues that Missouri's "going to and coming from" rule is applicable and renders the injuries non-compensable.[2]

---

1. It is disputed as to whether Bear drove directly to his medical appointment from his place of employment, or home first. Counsel for the parties have agreed that should a court determine that resolution of the issue of compensability depends upon this factual determination, then a hearing is necessary to resolve this factual dispute prior to any decision being made on the issue of compensability. Neither the administrative law judge, nor the commission, concluded that the issue of compensability rested on the determination of this issue.

2. The employer also asserts that the reckless and negligent driving of the intoxicated driver was the sole cause of Bear's injuries incurred in the second accident and served to break the causation chain. See *Manley v. American Packing Co.,*

■ Our review is set forth in § 287.495.1, RSMo 1994. Where there is no factual dispute, only the construction and applicability of the law to the facts, the issue is one of law. *Division of Employment Sec. v. Taney County Dist. R–III*, 922 S.W.2d 391, 393 (Mo. banc 1996); *Mann*, 860 S.W.2d at 15. Those aspects of the commission's determination which require the application of law, as distinguished from a finding of facts, is not binding on the reviewing court. *Leslie v. School Servs. & Leasing, Inc.*, 947 S.W.2d 97, 99 (Mo.App.1997). Such determinations of the application of the law are subject to independent review. *Id.*

Bear suggests that there is a "recognizable trend" that injuries which occur while travelling to and from medical treatment for prior compensable injuries are considered a natural and probable consequence of the prior injury and, therefore, arise out of and are in the course of employment. He refers to *Larson's Workers' Compensation Law*, which articulates the rule that "a subsequent injury . . . is compensable when it is a direct and natural result of a compensable primary injury," and "[a] trip to the doctor's office has usually been considered sufficiently causally related to the employment by the mere fact that the work connected injury was the cause of the journey. . . ." *Larson's*, Vol. 1 at § 13.11 and § 13.13. As an example of this trend, he cites to *Taylor v. Centex Const. Co., Inc.*, 191 Kan. 130, 379 P.2d 217 (1963).

In *Taylor v. Centex Const.*, the employee was injured in a collision en route to work at the construction site where he had been earlier that morning. 379 P.2d at 218. He had been to his doctor's office for treatment for a previous work-related eye injury. *Id.* The Kansas Supreme Court determined that the statute, which codified the going to and coming from rule under Kansas workers' compensation case law, had no application because the employer had directed Taylor to obtain medical treatment. *Id.* As a result, the court found the injury compensable because the trip and the treatment were autho-

rized by the employer. *Id.* at 221. However, the court also stated:

> The words "arising out of and in the course of employment" . . . shall not be construed to include injuries to the employee occurring while he is on his way *to assume the duties of his employment or after leaving such duties*, the approximate cause of which injury is not the employer's negligence.

*Id.* at 222 (emphasis added).

■ The going to and coming from rule, as articulated by Missouri courts, is that injuries sustained while an employee is going to or coming from work are not compensable because the injuries do not arise out of and in the course of employment. *Cox v. Tyson Foods*, 920 S.W.2d 534, 535 (Mo. banc 1996)(citing *Person v. Scullin Steel Co.*, 523 S.W.2d 801, 806 (Mo. banc 1975)); *Davis v. McDonnell Douglas*, 868 S.W.2d 170, 171 (Mo.App.1994). The rationale is that the travelling risks are those shared by the common public. *Davis*, 868 S.W.2d at 171. "[I]t is the inevitable condition of employment that every worker present himself at the assigned location to perform the task for which he was hired and depart therefrom." *Garrett v. Industrial Comm'n*, 600 S.W.2d 516, 519 (Mo.App.1980).

■ Since Bear's automobile accident occurred while he was on his way home from his doctor's appointment, his reliance on *Taylor*, is misplaced. Taylor was on a trip back to work, not home, as Bear was. Even if Bear was deemed to be in the course and scope of his employment while receiving treatment at the doctor's office for the prior compensable injury, the going to and coming from rule prevents recovery for injuries received while he was travelling home. "It is not sufficient that the employment may simply have furnished an *occasion* for an injury," *Kelley v. Sohio Chem. Co.*, 392 S.W.2d 255, 257 (Mo. banc 1965)(emphasis in original), and it is also not sufficient "that the

---

363 Mo. 744, 253 S.W.2d 165, 169 (1952). Furthermore, the employer claims that automobile insurance should provide coverage, not workers' compensation, and that sound policy requires denial of compensation. *McQuerrey v. Smith St.*

*John Mfg. Co.*, 240 Mo.App. 720, 216 S.W.2d 534 (1948); *Leslie v. School Servs. & Leasing, Inc.*, 947 S.W.2d 97 (Mo.App.1997). We do not reach either of these arguments.

victim's employment caused him to be at the place where it happened." *Liebman v. Colonial Baking Co.,* 391 S.W.2d 948, 952 (Mo. App.1965). *See also Turpin v. Turpin Elec., Inc.,* 904 S.W.2d 539, 542 (Mo.App.1995).

The Missouri Supreme Court has addressed the issue of compensability in *Snowbarger v. MFA Cent. Coop.,* 349 S.W.2d 224 (Mo. banc 1961).[3] In *Snowbarger,* the employee was killed as a result of injuries received in an automobile accident while on a trip to see his family doctor for treatment of a prior work-related injury. Snowbarger asked for and was given time off from work to drive from Lancaster, Missouri, to Hedrick, Iowa, to see his family doctor. *Snowbarger,* 328 S.W.2d at 51. He was paid for the time off.

The Missouri Supreme Court in *Snowbarger* ruled that the claimant:

[L]eft the course of his employment and began the trip to Hedrick, during which he was fatally injured by virtue of a risk common to that of the motoring public, to wit: a traffic casualty in nowise arising "in the course of his employment" or incidental to the course thereof.

349 S.W.2d at 226. The court approved the analysis contained in *Larson's Workers' Compensation Law,* which reviewed cases with similar factual patterns, and determined that:

[A]dditional facts which might serve to bring the actual trip within the course of employment, so that such falls from neutral or unexplained causes could ... be deemed to arise out of employment.... It should not, therefore, be necessarily concluded that anything happening to an injured workman in the course of a visit to the doctor is compensable. To get this result, there should either be a showing that the trip was in the course of employment by usual tests, or that the nature of the primary injury contributed to the subsequent injury *in some way other than mere occasioning the journey* during

which harm from a totally unrelated source occurred.

349 S.W.2d at 227 (quoting *Larson's,* Vol. 1, § 13.13)(emphasis added).

In support of this contention, the *Snowbarger* court compared cases cited by *Larson's* in which the accident was found to be compensable (when the employee was on her way back to work, or when the employee was hurt on the way to the doctor, pursuant to her employer's direction, during working hours) with cases in which the injuries were non-compensable (where the highway collision took place on the claimant's own time, and when the employee was returning home from treatment). *Id.* For example, *Larson's* refers to *Mack v. M. & S. Maintenance Co.,* 4 N.J.Super. 251, 66 A.2d 734 (A.D.1949), where the court found that an employee who slipped and fell on the ice, while returning home from treatment for his work-related broken leg, was not entitled to compensation. *Snowbarger,* 349 S.W.2d at 227.

Bear argues that *Snowbarger* is not controlling because it was dependent on the fact that Snowbarger was "permitted" to see his family doctor, while Bear was "authorized" and, in fact, required to go to the doctor sanctioned by his employer. This difference, he argues, weakened the causal connection between Snowbarger's prior work-related injury and the subsequent automobile accident.

■ Although we agree that the *Snowbarger* decision is distinguishable on its facts, we believe that it represents the Missouri Supreme Court's intent to limit recovery for secondary injuries that are causally connected to a primary compensable injury. "It should not ... be necessarily concluded that anything happening to an injured workman in the course of a visit to the doctor is compensable. To get this result, there should be ... a showing ... that the nature of the primary injury contributed to the subsequent injury in some way other than merely occasioning the journey during which harm from a totally unrelated source oc-

---

3. The factual history is taken from the opinion of the Kansas City Court of Appeals, *Snowbarger v. MFA Cent. Coop.,* 328 S.W.2d 50 (Mo.App.1959). The Missouri Supreme Court adopted by refer-

ence the opinion of the majority of the Kansas City Court of Appeals, adding in its opinion certain contentions raised by the claimant. *Snowbarger,* 349 S.W.2d at 225.

curred." 349 S.W.2d at 227 (quoting *Larson's*, Vol. 1, § 13.13).[4]

Bear also asserts that the facts related to his trip constituted an exception to the going to and coming from rule in that he was conducting "employer business" by seeking treatment for a prior work-related injury at the time of the accident. He contends that the trip from his doctor's appointment to his home was an extension of the workplace, because the entire trip was: (1) employer directed; (2) was paid for by the employer;[5] and (3) he subjected himself to a termination of the benefits if he refused to go to the appointment. Thus, Bear argues that his travel from his doctor's appointment to his own home was employer business.[6]

■ Although personal actions of an employee, such as driving home from work, can be compensable as employer business, a mutual benefit to the employer must be found. *See Mann*, 860 S.W.2d at 16. Bear argues that his trip to his doctor's office benefited his employer in that it was interested in having him return to his full capabilities as an employee and, moreover, the employer is under a statutory duty to furnish medical care as well as the employee is under a duty to submit to the treatment in order to retain his or her benefits.

The hazard that Bear encountered on his way home from the doctor's office was the same hazard any employee encounters travelling to and from employment. In *Garrett v. Industrial Comm'n*, the court stated that an employee's injuries are not compensable "if he is hurt while journeying to or returning from his place of work because it is the inevitable condition of employment that every worker presents himself at the assigned location to perform the task for which he was hired and depart therefrom when a day's work is over." 600 S.W.2d at 519. For example, in *Davis v. McDonnell Douglas*, the court reviewed a case where the employee was injured in an accident which occurred after she had turned out of the employee parking lot. 868 S.W.2d at 171. The court held that the accident was not compensable because it occurred on a public road where the employer exercised no control or responsibility. *Id.* at 173. Bear's trip home "served no employment-related function sufficient to bring [him] within the workers' compensation act." *Garrett*, 600 S.W.2d at 519–20.

■ "[I]t is the nature of the employee's activity at the time of the injury itself which governs the issue of compensability." *Turpin*, 904 S.W.2d at 542. "Worker's compensation was never designed to operate as accident insurance with blanket coverage as to any and all accidental injuries wherever and whenever received by an employee." *Leslie*, 947 S.W.2d at 99 (quoting *McQuerrey v. Smith St. John Mfg. Co.*, 240 Mo.App. 720, 216 S.W.2d 534, 537 (1948)).

In the case before us, Mr. Bear's work did not continue at his destination, and he was off of the employer's time clock. A subsequent medical appointment for treatment of a prior work-related injury may fall within the scope and course of employment, but that is not the factual case presented here. In this case, the commission did not err in de-

---

4. Furthermore, we have reviewed the current edition of Larson's and the cases it cites in support of its statement that "[w]hen an employee suffers additional injuries because of an accident in the course of a journey to a doctor's office occasioned by a compensable injury, the additional injuries are generally held compensable." Larson's, Vol. 1, § 13.13 (1997). The facts of the majority of the cases cited for this proposition are for injuries incurred while the employee was travelling en route to the appointment, at the doctor's office, or travelling back to the workplace after the appointment was over. Thus, the causal link between the second accident to the *employment was sufficient to find it compensable* as arising out of and in the course of employment.

5. Note that the record does not support that there was any evidence presented regarding this claim.

6. In support of this contention, Bear asserts that Larson's sets forth the general proposition that if a journey is covered, the return trip is also covered as the employee cannot be suspended at the far end of the trip. Larson's, Vol. 1, § 19.29. Our reading of this section indicates that this is the general rule for personal deviations during a business trip, and is not applicable to this factual situation.

termining that injuries received while travelling home from a medical appointment are not compensable.

The decision of the Labor and Industrial Relations Commission is affirmed.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.