

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| LUCILLE SCHOEN, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | |
| | ) | WD82258 |
| | ) | |
| MID-MISSOURI MENTAL HEALTH | ) | OPINION FILED: |
| CENTER and TREASURER OF THE | ) | September 3, 2019 |
| STATE OF MISSOURI - CUSTODIAN | ) | |
| OF THE SECOND INJURY FUND, | ) | |
| | ) | |
| Respondents. | ) | |

### Appeal from the Labor and Industrial Relations Commission

**Before Division Two:** Lisa White Hardwick, Presiding Judge, and
Thomas H. Newton and Mark D. Pfeiffer, Judges

Ms. Lucille Schoen ("Schoen") appeals from the final award of the Labor and Industrial Relations Commission ("Commission"), which reversed the Administrative Law Judge's ("ALJ") award granting Schoen permanent total disability benefits. We reverse and remand to the Commission for further proceedings consistent with today's ruling.

### Factual and Procedural Background

In May 2009, Schoen was working as a charge nurse for Mid-Missouri Health Center ("Center"). On May 6, 2009, Cypermethrin was sprayed around the Center's air conditioning

units to control ants. When Schoen reported to work on May 8, 2009, and was exposed to the chemical, she complained of throat and eye irritation, as well as coughing and wheezing. After going to an urgent care clinic on May 11, 2009, Schoen returned to work with no work restrictions.

In response to Schoen's continued complaints, the Center sent her for additional evaluation to occupational and environmental medicine specialist Dr. Eddie Runde. On May 22, 2009, Schoen arrived at Dr. Runde's office for her appointment. Dr. Runde sent Schoen "across the street" to get a chest x-ray. After obtaining the chest x-ray, Schoen returned to Dr. Runde's office and, while being escorted to the patient exam area for pulmonary function tests, Dr. Runde inadvertently and accidentally tripped Schoen and caused her to trip and fall on her left knee and left shoulder, injuring her left knee, left shoulder, back, and neck.

Dr. Runde examined Schoen's lungs and found "diffuse wheezes and some rhonchi." His diagnosis was "[m]uscosal irritation due to possible inhalation of ant poison." He prescribed an inhaler. As part of Dr. Runde's evaluation of Schoen, and prior to discharging her that day, he also examined her for injuries she sustained as a result of the tripping incident at Runde's medical facility. Dr. Runde found that she had some minimal erythema, full range of motion, and was able to walk with normal gait. He released her to regular duty with no restrictions and noted that no permanent disability "would be expected" related to her May 8, 2009 Cypermethrin exposure. Schoen did not return to Dr. Runde.

On June 10, 2009, Schoen self-referred to Dr. Lawrence Lampton, a pulmonary and internal medicine specialist, complaining of chest discomfort, shortness of breath, chronic cough, and chronic sinusitis. He diagnosed her chronic cough and chronic sinusitis as probably

allergy-related to previously unrecognized asthma. He reviewed her pulmonary functions, which he found to be within normal limits.

Also on June 10, 2009, Schoen filed a claim for compensation with the Division of Workers' Compensation ("Division"), alleging that "[w]hile in the course and scope of employment, [Schoen] was required to work in an area where bug spray had been sprayed into the air conditioning vents on May 6, 2009, and [Schoen] breathed in the fumes while working 8 hours on May 8, 2009." She also asserted a claim against the Second Injury Fund ("Fund") for permanent disability based upon pre-existing disabilities, identified as "back" in 1996, "psyche" in 1996, and "finger on right hand" in 2001.

Dr. Lampton re-evaluated Schoen on June 22, 2009, for her chronic sinusitis and chronic cough and found that her coughing had become rare and her breathing had improved.

On July 14, 2009, Schoen saw her primary care physician, Dr. Robert Bynum, complaining of left knee and shoulder pain from the May 22, 2009 fall in Dr. Runde's office.

On August 3, 2009, the Center sent Schoen to Dr. Thomas Hyers, a pulmonary specialist, for a medical evaluation. Dr. Hyers assessed Schoen to have transient bronchitis and upper airway irritation as a result of exposure to insect spray, which conditions were not chronic or permanent and were limited to the date of exposure and several days thereafter. He placed Schoen at maximum medical improvement and assessed no permanent partial disability.

On September 10, 2009, *the Center* sent Schoen to Dr. Herbert Haupt, an orthopedic surgeon, for evaluation of ongoing complaints regarding her left and right knees and left shoulder from being tripped by Dr. Runde on May 22, 2009, and falling to the floor.[1] Dr. Haupt

---

[1] The Center's actions in authorizing orthopedic consultation and physical therapy treatment for injuries sustained as a result of the tripping incident during the Dr. Runde medical consultation are contradictory to the position later taken by the Center with the Commission that these injuries were *not* causally related to a workplace injury.

assessed that the fall in Dr. Runde's office was the prevailing factor resulting in a mild left shoulder adhesive capsulitis and in contusion to both knees and likely resulting in the worsening of or the development of left knee flexion contracture and weakness. Dr. Haupt prescribed physical therapy. Dr. Haupt examined Schoen again on September 30, 2009, when she presented with headaches. She admitted to improvement in her shoulder and her knees with the benefit of physical therapy. Dr. Haupt opined that, regarding Schoen's fall in Dr. Runde's office, she was at maximum medical improvement, and he released her from care. He also opined that she sustained a permanent rateable disability of zero percent at the level of the left shoulder and bilateral knees.

Schoen returned to Dr. Bynum on December 11, 2009, presenting with pain in her left knee and irritated back issues from the May 22, 2009 tripping accident in Dr. Runde's office.

On September 30, 2010, Schoen filed an amended claim with the Division. In addition to her original allegations regarding breathing the bug spray fumes, Schoen alleged that the tripping incident at Dr. Runde's medical facility during the course of receiving authorized medical treatment caused her to suffer additional injuries. She renewed her claim against the Fund for permanent disability.

On July 21, 2014, Dr. David Volarich evaluated Schoen at her attorney's request. He took a medical history from Schoen, performed a physical examination and tests, and reviewed Schoen's medical records, including x-rays. In Dr. Volarich's report, he opined that Schoen's exposure to Cypermethrin on May 8, 2009, was the prevailing factor causing her symptoms, need for treatment, and resulting disabilities. He further stated regarding causation:

> During the course of treatment for her pulmonary exposure, she was accidentally tripped by her treating physician at his office, causing the fall onto her left side, striking her left shoulder, hit the knee, and causing a sideways type whiplash injury to the neck and low back, in turn causing left shoulder adhesive capsulitis,

4

a bicompartmental left knee meniscal tear, and chondral injuries that subsequently developed accelerated post-traumatic arthropathy as well as causing a cervical strain/sprain and increase in headaches and significant irreversible aggravation of her lumbar syndrome due to spondylosis and prior disc osteophyte complex at L5-S1 that required extensive pain management.

Dr. Volarich provided disability ratings related to Schoen's primary, May 8, 2009 injury and her subsequent trip and fall on May 22, 2009:

- 5% permanent partial disability ("PPD") of the body as a whole due to pulmonary exposure to Cypermethrin;

- 15% PPD of the body as a whole due to cervical strain/sprain with aggravation of headaches;

- 25% PPD of the body as a whole rated at the lumbar spine due to irreversible aggravation of her lumbar syndrome;

- 25% PPD of the left upper extremity rated at the shoulder due to adhesive capsulitis;

- 45% PPD of the left lower extremity rated at the knee due to bicompartmental meniscal tears and chondral injuries.

Based on his medical assessment, Dr. Volarich was of the opinion that Schoen had achieved maximum medical improvement and was "permanently and totally disabled as a direct result of the work related injury of 5/8/09 standing alone."

On February 17, 2015, Schoen filed another amended claim with the Division, changing her claim against the Fund to one for permanent *total* disability.

Orthopedic surgeon Dr. George Paletta performed a medical examination of Schoen on behalf of the Center on June 3, 2015, and assessed: end stage osteoarthritis left knee, moderately severely symptomatic; and degenerative joint disease right knee, minimally symptomatic. Dr. Paletta ultimately concluded that Schoen's underlying chronic, progressive degenerative joint

5

disease, not her May 2009 injury in Dr. Runde's office, was the prevailing factor in her need for future medical treatment.

Finally, orthopedic spine surgeon Dr. Michael Chabot performed a medical examination of Schoen on July 31, 2015, regarding back pain from her May 2009 fall in Dr. Runde's office. After reviewing the medical records and imaging studies, Dr. Chabot diagnosed the following conditions: history of trip and fall/back contusion; back strain; history of chronic multi-level degeneration involving lumbar spine; and history of bilateral knee joint arthritis. Dr. Chabot opined that symptoms relating to Schoen's strain injury had resolved, that she had reached maximum medical improvement, and that her present complaints were "causally related to multiple pre-existing medical conditions to include multi-articular arthritis more specifically involving the knee joints, multi-level disc degeneration and facet degeneration involving the lumbar spine[,] and degenerative spondylolisthesis unrelated to her work injury." Dr. Chabot opined that Schoen could perform clerical administrative-type work in the light range.

The ALJ conducted a hearing on February 2, 2018, and identified the first of four issues as "whether the work accident of May 8, 2009, is the prevailing factor in the cause of any or all of the injuries and/or conditions alleged in the evidence[.]" The ALJ issued an award on March 22, 2018. The ALJ found that Schoen was permanently and totally disabled due to her May 8, 2009 work injuries, including injuries sustained as a result of the tripping incident in the course of receiving authorized medical treatment from the employer-directed medical provider, Dr. Runde, on May 22, 2009; that the Center was responsible for payment of weekly permanent total disability benefits; and that the Fund had no liability.

On April 10, 2018, the Center applied to the Commission for review of the ALJ's award to Schoen of compensation for permanent total disability benefits, alleging that: (1) the weight

of the evidence presented supported a finding that Schoen was not permanently totally disabled; (2) if she was permanently totally disabled, the Fund was liable for those benefits; (3) "[t]he ALJ erred by including alleged injuries to [Schoen's] left knee, right knee, left shoulder, left hip, lumbar spine, and neck when assessing the nature and extent of the primary work-related injury"; and (4) the ALJ erred in ordering the Center to reimburse Schoen for past medical charges. The Commission issued its Final Award Denying Compensation, with one member dissenting. The majority of the Commission concluded:

- Schoen sustained no permanent partial disability to her pulmonary functions as a result of her May 8, 2009 Cypermethrin exposure;

- Schoen's slip and fall on May 22, 2009, after Dr. Runde accidently tripped her, though taking place in the doctor's office, was not part of the course of any medical treatment she was undergoing due to her ant spray exposure and did not arise out of any risk source inherent in her employment;

- there was no causal connection between alleged disabilities relating to left knee pain, left shoulder pain, low back pain, and neck pain with headaches and her Cypermethrin exposure at work on May 8, 2009; and

- because Schoen sustained no PPD in connection with her primary injury, her claim against the Fund for disability attributable to the combination of alleged pre-existing disabilities with disability attributable to the primary injury was moot.

Schoen timely appealed.

### Standard of Review

In reviewing a workers' compensation final award, "[w]e review the decision of the Commission, not that of the ALJ." *Glasco v. Treasurer of State-Custodian of Second Injury*

7

*Fund*, 534 S.W.3d 391, 397 (Mo. App. W.D. 2017). The court, on appeal, may modify, reverse, remand for rehearing, or set aside the Commission's final award solely on the following grounds: (1) "the [C]ommission acted without or in excess of its powers"; (2) "the award was procured by fraud"; (3) "the facts found by the [C]ommission do not support the award"; or (4) "there was not sufficient competent evidence in the record to warrant the making of the award." § 287.495.1.[2]

We defer to the Commission's findings on issues of fact, witness credibility, and the weight given to conflicting evidence. *Malam v. State, Dep't of Corr.*, 492 S.W.3d 926, 928 (Mo. banc 2016). However, "[t]he whole record must be examined in order to determine whether there is sufficient and competent evidence to support the Commission's decision." *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 808 (Mo. banc 2017) (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003)). "Questions of law are reviewed *de novo*." *Id.* (citing *Malam*, 492 S.W.3d at 928).

**Analysis**

Schoen raises three points on appeal, all of which challenge the Commission's conclusion as a matter of law that her injuries sustained at Dr. Runde's office were not the product of "medical treatment" that she was receiving for her work-related injuries and/or condition or that her injuries sustained at Dr. Runde's medical facility were not causally connected to her workplace injury and treatment thereof. Hence, we address Schoen's points on appeal collectively in the analysis of our ruling today.

---

[2] "With regard to workers' compensation cases, the statute in effect at the time of injury is generally the applicable version." *Kayden v. Ford Motor Co.*, 532 S.W.3d 227, 229 n.1 (Mo. App. W.D. 2017). Thus, all statutory references are to the REVISED STATUTES OF MISSOURI 2000, as updated by the 2008 Cumulative Supplement.

The Commission majority determined that Schoen's May 22, 2009 injuries were not compensable because they were "not part of the course of any medical treatment [Schoen] was undergoing due to her ant spray exposure and did not arise out of any risk source inherent in her employment." The Commission majority further concluded that the injuries Schoen allegedly sustained while visiting Dr. Runde's office on May 22, 2009, were "clearly not the direct result of any necessary medical treatment for her primary injury" and that there was no causal connection between the May 22, 2009 injuries and her work injury due to ant spray exposure on May 8, 2009.

Under the Missouri Workers' Compensation Law ("Act"), "[a]n injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." § 287.020.3(1). A "prevailing factor" is "the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id.* The Commission found, and the Center does not dispute, that Schoen was exposed to Cypermethrin bug spray on May 8, 2009, while at work and that the Center authorized and directed her for additional evaluation of pulmonary complaints by Dr. Runde at his medical facility on May 22, 2009.

The parties do not dispute the proposition stated in *Bear v. Anson Implement, Inc.*, 976 S.W.2d 553, 557 (Mo. App. W.D. 1998), that not everything that happens to an injured employee surrounding a visit to the doctor is compensable. However, the *Bear* court's ruling was based on the application of the going and coming rule, which is not at issue in this case. In *Bear*, the employee sought workers' compensation benefits for injuries he received in an automobile accident on his way home from employer-authorized medical treatment he was receiving for a prior workers' compensation injury. 976 S.W.2d at 555. The issue on appeal was whether the

9

automobile accident arose out of and in the course of Bear's employment. *Id*. The court extended the going and coming *to work* rule to going and coming *to authorized medical treatment* and denied coverage for the injuries sustained by the employee "coming from" the employer-directed medical appointment, stating that "[t]he going to and coming from rule, as articulated by Missouri courts, is that injuries sustained while an employee is going to or coming from work are not compensable because the injuries do not arise out of and in the course of employment." *Id*. at 556.

Here, however, Schoen was not "going to" or "coming from" her employer-directed medical appointment when she was injured; rather, she was *at* the doctor's medical facility and received her orthopedic injuries in the course of receiving authorized medical treatment by Dr. Runde. Neither the Commission's ruling, the Center's briefing, nor our independent research has identified a single Missouri case in which the courts of this state have concluded that an employee's injuries sustained *while at the medical facility* for employer-directed and authorized medical treatment are *not* compensable as the natural and probable consequence of the original injury for which medical treatment was authorized in the first instance.[3] To the contrary, Missouri case precedent holds the opposite.

In *Lahue v. Missouri State Treasurer*, 820 S.W.2d 561, 562 (Mo. App. W.D. 1991), the employee, in the course of her employment, received an injury to her right ankle. As she was

---

[3] The Commission's reliance on *Meinczinger v. Harrah's Casino*, 367 S.W.3d 666 (Mo. App. E.D. 2012), is misplaced as that case is inapposite to the present case. In *Meinczinger*, the employee tripped over a manhole cover at her place of employment in 2002 and injured her left knee. *Id*. at 667. In 2008 she filed another claim for compensation, reporting that she injured her right knee and left hip in 2007 by compensating for her left knee injury. *Id*. In 2008, employee, employer, and insurer entered into a stipulation for compromise settlement of the 2002 injury, releasing employer from all liability for the 2002 accident. *Id*. In 2009, employee filed an amended claim for compensation for the 2007 injury to her right knee and left hip, reporting that she received that injury at a physical therapy center while receiving physical therapy treatment for her 2002 injury. *Id*. The court concluded that the Commission *lost jurisdiction* over the 2002 injury and all injuries flowing as a natural consequence of it, including the 2007 injury, because the parties entered into a settlement agreement approved by an ALJ that closed out all claims stemming from the 2002 injury. *Id*. at 668. Thus, *Meinczinger* was decided on the basis of a procedural issue and did *not* directly discuss the causal connection between the employee's 2002 and 2007 injuries.

undergoing whirlpool therapy for her ankle injury, she fell off the chair upon which she was sitting and injured her right hip and low back. *Id*. She filed a claim for additional compensation, which was denied. *Id*. The question on appeal was whether her fall from the chair as she was undergoing whirlpool physical therapy was a subsequent injury that was not causally related to her original injury, or whether the ankle injury she sustained at work and the hip and low back injury she sustained nine days later while receiving treatment for the ankle injury constituted a single injury. *Id*. The court concluded that the fall from the chair was a part of the same injury as the ankle injury, based on the rule of law that injuries sustained during authorized medical treatment for the original injury are the natural and probable consequence flowing from the original injury. *Id.* The *Lahue* court did not require that the subsequent injury be an aggravation of the original injury.

The *Lahue* court noted that the "natural consequence" rule has been recognized by other Missouri courts. In *Manley v. American Packing Co*., 253 S.W.2d 165 (Mo. 1952), the employee sustained severe injuries to his right knee in a work-related automobile accident. *Id*. at 166. Thereafter, he suffered a fall while visiting the home of his father, reinjuring his right knee. *Id.* During the course of a surgical operation to repair his knee, he died as the result of a pulmonary embolism. *Id*. The court concluded that:

> The evidence in this case warranted the Commission in finding that the injuries sustained by Manley in the automobile accident seriously weakened and impaired the use of his right knee, rendering him unstable in walking and, without warning, frequently causing him to fall; that his fall in the orchard while walking on level, unplowed grassland, was due to the weakened and injured knee rather than to some external force; and that the fatal embolism which followed was, in fact, the culmination of a series of injuries, beginning with the original, each in sequence thereafter being the result of the one immediately preceding. The award is supported by competent and substantial evidence.

11

*Id*. at 170. In *Wilson v. Emery Bird Thayer Co*., 403 S.W.2d 953 (Mo. App. 1966), the court recognized the "well established rule" enunciated in *Manley*. In *Wilson*, the employee slipped and fell in a work-related accident, injuring her neck, arm, and shoulder. *Id*. at 955. Employer arranged for treatment, which included employee being placed in traction. *Id.* As a result of the traction, employee sustained a jaw injury. *Id*. Employer's doctors discharged her without treating her jaw injury, and thereafter, employer and insurer terminated her medical treatment. *Id*. Relying on *Manley*, the court determined that employee's new condition in her jaw caused by the treatment of her original injury was compensable because her jaw injury followed as a legitimate or natural consequence of the original accident. *Id*. at 958.

Here, the employer directed Schoen to Dr. Runde's medical facility for medical treatment of her pulmonary-related symptoms that began on May 8, 2009, after exposure to Cypermethrin in the workplace environment—the original injury. While Schoen was *at* Dr. Runde's medical facility and after she was *directed* by Dr. Runde's medical staff to proceed to an examination room, Dr. Runde himself accidentally tripped Schoen while she was being escorted to the patient examination room. Dr. Runde directed the location for his patient's pulmonary testing; Schoen merely followed the directive of her doctor and, while doing so, sustained new injuries. Therefore, Schoen's new injuries were sustained in the course of Schoen receiving authorized medical treatment for her original injury and, hence, were part of the natural consequence flowing from her original injury. The Commission's conclusion to the contrary is neither supported by the factual record nor the law applied to the factual record as set forth by the Commission's decision.

The Commission's majority ruling seems to suggest that, absent some sort of medical instrument or intended hand of a doctor placed upon the patient for a diagnostic or surgical

procedure, no medical "treatment" has occurred. This narrow view of "medical treatment" belies the reality of how doctors function in the business of diagnosing and treating their patients. Medical intake forms provide valuable insight about a patient's history. Obtaining radiological or magnetic resonance imaging studies assist a doctor in evaluating and assessing the patient's medical needs. Pulmonary testing provides valuable data to doctors. Laboratory testing of a patient's blood or urine can provide valuable diagnostic data to doctors. Surely, then, while at a medical facility, the course of receiving authorized treatment from a doctor includes being transported by wheelchair or otherwise escorted to a radiological consultation room, a laboratory testing location, a surgical operating room, or a patient examination room. Simply put, the doctor cannot do the doctor's job if the patient refuses to cooperate with the doctor's directive on *how* and *where* the process of diagnosis or medical procedures are to take place.

Accordingly, based on the rule of law that injuries sustained during authorized medical treatment for the original injury are the natural and probable consequence flowing from the original injury, the work accident of May 8, 2009, was the prevailing factor in the cause of the injuries Schoen sustained in Dr. Runde's office on May 22, 2009. The Commission acted in excess of its powers in concluding otherwise, warranting reversal.

Schoen's appeal is granted.

## Conclusion

The Commission's ruling is reversed and remanded for further proceedings before the Commission consistent with our ruling today. Specifically, this matter is remanded to the Commission with instructions that the Commission enter an award finding that the injuries sustained by Schoen as a result of her fall at Dr. Runde's office on May 22, 2009, are medically causally connected with the work-related injury that occurred on May 8, 2009. In light of this

finding, the Commission is instructed to consider all remaining issues that were raised by the Center in its appeal of the ALJ's award of compensation to Schoen, including but not limited to, issues relating to the nature and extent of Schoen's disability, the extent of any disability and/or medical benefits due Schoen, and whether the Center or the Fund or both have liability to Schoen as a result of her claim for workers' compensation.

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Judge

Lisa White Hardwick, Presiding Judge, and Thomas H. Newton, Judge, concur.

14